# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### JACKSON DIVISION

MELINDA YPARREA and AMERICANA PRODUCTS
COMPANY, INC, d/b/a AMERICAN PRODUCTS
COMPANY, INC.; and MELINDA YPARREA, Individually                    **PLAINTIFFS**

v.                                        **CIVIL ACTION NO. 3:06cv343DPJ-JCS**

**WAL-MART STORES, INC.**                                        **DEFENDANT**

## AFFIDAVIT OF MELINDA YPARREA

STATE OF FLORIDA

COUNTY OF SANTA ROSA

1.     My name is Melinda Yparrea; I am over the age of 21 and am otherwise competent to make this affidavit. I am a Plaintiff in the above-styled action. I make this affidavit in support of the Plaintiffs' Response to the Motion of Defendant Wal-Mart Stores, Inc. ("Wal-Mart") to Dismiss for Improper Venue or, Alternatively, To Transfer Venue.

2.     I am the owner of Plaintiff American Products, Inc. ("American Products") and I was personally involved in the business transactions between American Products and Wal-Mart at issue in this lawsuit. Therefore, I have personal knowledge of the matters asserted in this affidavit.

3.     Wal-Mart's first eleven Purchase Orders to American Products were issued on August 6, 2003. True and correct copies of the eleven August 6, 2003, Purchase Orders from Wal-Mart to American Products are attached hereto as Exhibit A.

4.     In a package postmarked August 14, 2003, Wal-Mart sent American Products a package that included a proposed, undated Supplier Agreement and a Supplier Information

Manual. A true and correct copy of the proposed Supplier Agreement is attached hereto as Exhibit B. A true and correct copy of the cover page, table of contents and "Supplier Agreement" chapter of the Supplier Information Manual is attached hereto as Exhibit C.

5. Neither I nor any other representative of American Products ever signed the proposed Supplier Agreement Wal-Mart sent on August 14, 2003.

6. No one from Wal-Mart ever contacted American Products about the fact that no American Products representative ever signed and returned Wal-Mart's proposed Supplier Agreement.

7. After sending the proposed Supplier Agreement on August 14, 2003 that American Products never signed, Wal-Mart continued its prior practice of placing purchase orders with American Products on an order-by-order basis.

7. No Wal-Mart representative ever mentioned American Products' failure to sign the proposed Supplier Agreement.

8. After sending the initial proposed Supplier Agreement on August 14, 2003, Wal-Mart never requested that American Products renew any Supplier Agreement or enter into another proposed Supplier Agreement.

9. American Products no longer employs the following former employees who may be called as witnesses in this action: Gaston Bergeron of Milton, Florida; Nicole Bergeron of Milton, Florida; Mark Spencer of Lillian, Alabama; Bennett Luke of Pensacola, Florida; Matthew Yonke of Pensacola, Florida; and Thomas Morris of Pensacola, Florida.

FURTHER AFFIANT SAYETH NOT:

MELINDA YPARREA

STATE OF FLORIDA

COUNTY OF SANTA ROSA

Subscribed and sworn to before me by Melinda Yparrea, this ⎵17⎵ day of January, 2007.

_____
NOTARY PUBLIC

My Commission Expires: Feb 8, 2009

KARISSA L. BARR
MY COMMISSION # DD 385012
EXPIRES: February 8, 2009
Bonded Thru Budget Notary Services

# Purchase Order: 0250869371*
## PO Date: 08/06/03

INV 1005

PO102 & PO104
Total Cost: 11868.00

| ref Info: | PO101 & 2 | Buying Party: | | Header Info & Notes: |
|---|---|---|---|---|
| (JP) 00082 | | WAL-MART DC | 0078742028217 GLN | Trading Parmer: Wal-Mart |
| (MR) 0003 | | 2200 7TH AVENUE SOUTHWEST | | Interchange [ISA] Control No.: 850000004 |
| (PD) NEWITMWX36 | | | | Group [GS] Control No.: 850000004 |
| (A) 503BJ282G | | CULLMAN AL 35055 | | Transaction [ST] Control No.: 0001 |

| Dates: | PO401 & 2 | Carrier: | | TD501 & 05 |
|---|---|---|---|---|
| (001) 20030929 | | (O) USF DUGAN | | |
| (010) 20030922 | | | | |

=======================================IF MULTIPLE DESTINATIONS HAV
THE SAME SHIP DATE, PLEASE  SHIP TO FURTHEST DESTINATION
FIRST AND CLOSEST DESTINATIO LAST.
==========================  KEYED THROUGH SSO V8.5
DEFAULT TRAITS:UPDT 08/01/03 SUBMITTED BY CREED
SCALING APPLIED

| PO102 PO103 Quantity Unit | PO104 Price** | PO106 & 7 Item | PO108 & 9 Item (Alternate 1) | PO110 & 11 Item (Alternate 2) | PO401, 2, & 3 Casepack Info |
|---|---|---|---|---|---|
| 43 EA | 276.00 | (IN) 008283211 | (UP) 859748000496 | (VN) A-33 | 1 |

*Handwritten notes:*

Model Date
up By date
VIN - 6 Digit   82   O
            Dept   Sub sequence
Event
Type of order

Department

Sandy
256.737.
3143
Walmart DC

Truck

8/6 Change file
    - Down load weekly

GLN # - Global Location #
mandatory on Invoice

Retail Link - Spec sheet
    Support Services
    E commerce EDI

- B/O Mapping -
    Business example

Information on this report is intended as an overview only.  Not all EDI data is represented on this report.  Please refer to the raw EDI data for complete purchase order information.
* Price is always represented with two decimal places.



EXHIBIT
"A"

# Purchase Order: 0250869373*
## PO Date: 08/06/03

PO102 x PO103
### Total Cost: 12972.00

| Ref Info: | REF01 & 2 | Buying Party: | | Header Info & Notes: |
|---|---|---|---|---|

Ref Info: REF01 & 2

| OP) | 00082 |
| VR) | 0003 |
| PD) | NEWITMWK36 |
| A) | 503832820 |

**Buying Party:**

WAL-MART DC
690 HIGHWAY 206

DOUGLAS GA 31533

0078742028576

**Header Info & Notes:**

Trading Partner: Wal-Mart
Interchange [ISA] Control No.: 850000004
Group [GS] Control No.: 850000004
Transaction [ST] Control No.: 0002

**Dates:** DTM01 &2

| 001) | 20030929 |
| 010) | 20030922 |

**Carrier:** TD501 & 05

(O)___USF DUGAN

=============================IF MULTIPLE DESTINATIONS
HAV
THE SAME SHIP DATE, PLEASE   SHIP TO FURTHEST
DESTINATION
FIRST AND CLOSEST DESTINATIO LAST.
======================= KEYED THROUGH SSO V8.5
DEFAULT TRAITS UPDT 08/01/03 SUBMITTED BY CREED
SCALING APPLIED

| PO102 PO103 Quantity Unit | PO104 Price** | PO106 & 7 Item | PO108 & 9 Item (Alternate 1) | PO110 & 11 Item (Alternate 2) | PO401, 2, & 3 Casepack Info |
|---|---|---|---|---|---|
| 47  EA | 276.00 | (IN) 008283211 | (UP) 859748000496 | (VN) A-33 | 1 |

*  Information on this report is intended as an overview only.  Not all EDI data is represented on this report.  Please refer to the raw EDI data for complete
   purchase order information.

** Price is always represented with two decimal places.

# Purchase Order: 0250869375*
## PO Date: 08/06/03

PO162 & PO164

Total Cost: 15456.00

| ef Info: | REF01 & 2 | Buying Party: | | Header Info & Notes: |
|---|---|---|---|---|
| JP) | 00082 | WAL-MART DC | 0078742028668 | Trading Partner: Wal-Mart |
| MR) | 0003 | 2200 MANUFACTURERS BOULEVARD | | Interchange [ISA] Control No.: 850000004 |
| PD) | NEWITMWX36 | | | Group [GS] Control No.: 850000004 |
| A) | 503832820 | BROOKHAVEN MS 39601 | | Transaction [ST] Control No.: 0003 |

| ates: | D1M01 & 2 | Carrier: | | TD501 & 05 | ===================IF MULTIPLE DESTINATIONS |
|---|---|---|---|---|---|
| 001) | 20030929 | (O) | USF DUGAN | | HAV |
| 010) | 20030922 | | | | THE SAME SHIP DATE, PLEASE SHIP TO FURTHEST |
| | | | | | DESTINATION |
| | | | | | FIRST AND CLOSEST DESTINATIO LAST. |
| | | | | | ==================== KEYED THROUGH SSO V8.5 |
| | | | | | DEFAULT TRAITS UPDT 08/01/03 SUBMITTED BY CREED |
| | | | | | SCALING APPLIED |

| PO102 PO103 | PO104 | PO106 & 7 | PO108 & 9 | PO110 & 11 | PO401, 2, & 3 |
|---|---|---|---|---|---|
| uantity Unit | Price** | Item | Item (Alternate 1) | Item (Alternate 2) | Casepack Info |
| 56 EA | 276.00 | (IN) 008283211 | (UP) 859748000496 | (VN) A-33 | 1 |

*Truck*

---

* Information on this report is intended as an overview only. Not all EDI data is represented on this report. Please refer to the raw EDI data for complete purchase order information.

** Price is always represented with two decimal places.

# Purchase Order: 0250869379*
## PO Date: 08/06/03

PO102 x PO104

Total Cost: 7728.00

| Ref Info: | REF01 & 2 | Buying Party: | | Header Info & Notes: | |
|---|---|---|---|---|---|
| OP) 00082 | | WAL-MART DC | 0078742029290 | Trading Partner: Wal-Mart | |
| MR) 0003 | | 2103 SOUTH MAIN | | Interchange [ISA] Control No.: 850000004 | |
| PD) NEWITMWK36 | | | | Group [GS] Control No.: 850000004 | |
| A) 503832820 | | SEARCY AR 72143 | | Transaction [ST] Control No.: 0004 | |

| Dates: | DTM01 & 2 | Carrier: | TD501 & 05 | ============IF MULTIPLE DESTINATIONS |
|---|---|---|---|---|
| 001) 20030929 | | (O) USF DUGAN | | HAV |
| 010) 20030922 | | | | THE SAME SHIP DATE, PLEASE SHIP TO FURTHEST |
| | | | | DESTINATION |
| | | | | FIRST AND CLOSEST DESTINATIO LAST. |
| | | | | ============ KEYED THROUGH SSO V8.5 |
| | | | | DEFAULT TRAITS UPDT 08/01/03 SUBMITTED BY CREED |
| | | | | SCALING APPLIED |

| | PO102 PO103 | PO104 | PO106 & 7 | | | |
|---|---|---|---|---|---|---|
| Quantity | Unit | Price** | Item | PO108 & 9 Item (Alternate 1) | PO110 & 11 Item (Alternate 2) | PO401, 2, & 3 Casepack Info |
| 28 | EA | 276.00 | (IN) 008283211 | (UP) 859748000496 | (VN) A-33 | 1 |

28 x 9 lbs
$50.00

---

* Information on this report is intended as an overview only. Not all EDI data is represented on this report. Please refer to the raw EDI data for complete purchase order information.

** Price is always represented with two decimal places.

# Purchase Order: 0250869381*
## PO Date: 08/06/03

PO102 x PO104
### Total Cost: 18492.00

| ef Info: | RH01 & 2 | Buying Party: | | Header Info & Notes: |
|---|---|---|---|---|
| OP) 00082 | | WAL-MART DC | | Trading Partner: Wal-Mart |
| AR) 0003 | | 4224 KETTERING ROAD | 0078742029474 | Interchange [ISA] Control No.: 850000004 |
| D) NEWITMWK36 | | | | Group [GS] Control No.: 850000004 |
| A) 503832820 | | BROOKSVILLE FL 34602 | | Transaction [ST] Control No.: 0005 |

| ates: | DTM01 & 2 | Carrier: | TD501 & 05 |
|---|---|---|---|
| 01) 20030929 | | (O)   S A I A MOTOR F | |
| 10) 20030922 | | | |

================================IF MULTIPLE DESTINATIONS
HAV
THE SAME SHIP DATE, PLEASE   SHIP TO FURTHEST
DESTINATION
FIRST AND CLOSEST DESTINATIO  LAST.
============================ KEYED THROUGH SSO V8.5
DEFAULT TRAITS UPDT  08/01/03 SUBMITTED BY CREED
SCALING APPLIED

| PO102  PO103 | PO104 | PO106 & 7 | PO108 & 9 | PO110 & 11 | PO401, 2, & 3 |
|---|---|---|---|---|---|
| uapck  Unit | Price** | Item | Item (Alternate 1) | Item (Alternate 2) | Casepack Info |
| 67  EA | 276.00 | (IN) 008283211 | (UP) 859748000496 | (VN) A-33 | 1 |

Trude

---

* Information on this report is intended as an overview only.  Not all EDI data is represented on this report.  Please refer to the raw EDI data for complete
  purchase order information.

** Price is always represented with two decimal places.

# Purchase Order: 0250869392*
## PO Date: 08/06/03

PO102 x PO104

Total Cost: 552.00

| Info: | RF F01 & 2 | Buying Party: | | Header Info & Notes: | |
|---|---|---|---|---|---|
| OP) 00082 | | WAL-MART DC | 0078742030821 | | Trading Partner: Wal-Mart |
| MR) 0003 | | 14863 FM 645 UNIT A | | Interchange [ISA] Control No.: 850000004 | |
| PD) NEWITMWK36 | | | | Group [GS] Control No.: 850000004 | |
| A) 503832820 | | PALESTINE TX 758011221 | | Transaction [ST] Control No.: 0006 | |



| ates: | DTM01 & 2 | Carrier: | TD501 & 05 | ====================IF MULTIPLE DESTINATIONS |
|---|---|---|---|---|
| 001) 20030929 | | (O)  S ATA MOTOR F | | HAV |
| 010) 20030922 | | | | THE SAME SHIP DATE, PLEASE  SHIP TO FURTHEST |
| | | | | DESTINATION |
| | | | | FIRST AND CLOSEST DESTINATIO  LAST. |
| | | | | ==================== KEYED THROUGH SSO V8.5 |
| | | | | DEFAULT TRAITS UPDT 08/01/03 SUBMITTED BY  CREED |
| | | | | SCALING APPLIED |

| PO102 | PO103 | PO104 | PO106 & 7 | PO108 & 9 | PO110 & 11 | PO401, 2, & 3 |
|---|---|---|---|---|---|---|
| Quantity | Unit | Price** | Item | Item (Alternate 1) | Item (Alternate 2) | Casepack Info |
| 2 | EA | 276.00 | (IN) 008283211 | (UP) 859748000496 | (VN) A-33 | 1 |

---

* Information on this report is intended as an overview only. Not all EDI data is represented on this report. Please refer to the raw EDI data for complete purchase order information.

** Price is always represented with two decimal places.

# Purchase Order: 0250869396*
## PO Date: 08/06/03

PO102 x PO104

Total Cost: 552.00

| Ref Info: | REF01 & 2 | Buying Party: | | Header Info & Notes: |
|---|---|---|---|---|

**Ref Info:**
( 00082
(MR) 0003
(PD) NEWITMWK36
(IA) 503832820

**Buying Party:**
WAL-MART DC    0078742031095
1659 POTTERTOWN RD

MIDWAY TN 37809

**Header Info & Notes:**
Trading Partner: Wal-Mart
Interchange [ISA] Control No.: 850000004
Group [GS] Control No.: 850000004
Transaction [ST] Control No.: 0007

**Dates:** DTM01 & 2
(001) 20030929
(010) 20030922

**Carrier:** TD501 & 05
(O) USF DUGAN

=========================IF MULTIPLE DESTINATIONS
HAV
THE SAME SHIP DATE, PLEASE SHIP TO FURTHEST
DESTINATION
FIRST AND CLOSEST DESTINATIO LAST.
========================= KEYED THROUGH SSO V8.5
DEFAULT TRAITS UPDT 08/01/03 SUBMITTED BY CREED
SCALING APPLIED

| PO102 PO103 | PO104 | PO106 & 7 | | | |
|---|---|---|---|---|---|
| Quantity Unit | Price** | Item | Item (Alternate 1) PO108 & 9 | Item (Alternate 2) PO110 & 11 | Casepack Info PO103, 2, & 3 |
| 2 EA | 276.00 | (IN) 008283211 | (UP) 859748000496 | (VN) A-33 | 1 |

*UPS* (handwritten)

*Inv. 1009* (handwritten)

---

Information on this report is intended as an overview only. Not all EDI data is represented on this report. Please refer to the raw EDI data for complete
purchase order information.

Price is always represented with two decimal places.

# Purchase Order: 0250869399*
## PO Date: 08/06/03

PO102 x PO104

## Total Cost: 14076.00

| ef Info: | REF01 & 2 | Buying Party: |
|---|---|---|
| 3P) 00082 | | WAL-MART DC |
| 4R) 0003 | | 3022 HWY 743          0078742031903 |
| D) NEWITMWK36 | | |
| A) 503832820 | | OPELOUSAS LA 70570 |

| ates: | DTM01 & 2 | Carrier: | | TD501 & 05 |
|---|---|---|---|---|
| 01) 20030929 | | (O)    S A I A MOTOR F | | |
| 10) 20030922 | | | | |

**Header Info & Notes:**

Trading Partner: Wal-Mart
Interchange [ISA] Control No.: 850000004
Group [GS] Control No.: 850000004
Transaction [ST] Control No.: 0008

===============================IF MULTIPLE DESTINATIONS
HAV
THE SAME SHIP DATE, PLEASE   SHIP TO FURTHEST
DESTINATION
FIRST AND CLOSEST DESTINATIO  LAST.
======================= KEYED THROUGH SSO V8.5
DEFAULT TRAITS UPDT 08/01/03 SUBMITTED BY  CREED
SCALING APPLIED.

| PO103<br>Quantity Unit | PO103<br>Price** | PO106 & 7<br>Item | PO108 & 9<br>Item (Alternate 1) | PO110 & 11<br>Item (Alternate 2) | PO401, 2, & 3<br>Casepack Info |
|---|---|---|---|---|---|
| 51  EA | 276.00 | (IN) 008283211 | (UP) 859748000496 | (VN) A-33 | 1 |



---

* Information on this report is intended as an overview only.  Not all EDI data is represented on this report.  Please refer to the raw EDI data for complete
purchase order information.

** Price is always represented with two decimal places.

# Purchase Order: 0250869400*
## PO Date: 08/06/03

PO102 x PO104
## Total Cost: 5244.00

| ef Info: | RI101 & 2 | Buying Party: | | Header Info & Notes: |
|---|---|---|---|---|
| )P) | 00082 | WAL-MART DC | 0078742032443 | Trading Partner: Wal-Mart |
| 4R) | 0003 | 385 CALLAWAY CHURCH ROAD | | Interchange [ISA] Control No.: 850000004 |
| 'D) | NEWITMWK36 | | | Group [GS] Control No.: 850000004 |
| A) | 503832820 | LA GRANGE GA 30241 | | Transaction [ST] Control No.: 0009 |

| ates: | D1M401 & 2 | Carrier: | | TD501 & 05 |
|---|---|---|---|---|
| )1) | 20030929 | (O) USF DUGAN | | |
| I0) | 20030922 | | | |

=================================IF MULTIPLE DESTINATIONS HAV
THE SAME SHIP DATE, PLEASE SHIP TO FURTHEST DESTINATION
FIRST AND CLOSEST DESTINATIO LAST.
========================== KEYED THROUGH SSO V8.5
DEFAULT TRAITS UPDT 08/01/03 SUBMITTED BY CREED SCALING APPLIED.

| PO102 Jantity | PO103 Unit | PO104 Price** | PO106 & 7 Item | PO108 & 9 Item (Alternate 1) | PO110 & 11 Item (Alternate 2) | PO401, 2, & 3 Casepack Info |
|---|---|---|---|---|---|---|
| 19 | EA | 276.00 | (IN) 008283211 | (UP) 859748000496 | (VN) A-33 | 1 |

---

* Information on this report is intended as an overview only. Not all EDI data is represented on this report. Please refer to the raw EDI data for complete purchase order information.

** Price is always represented with two decimal places.

# Purchase Order: 0250869402*
## PO Date: 08/06/03

PO102 x PO104

### Total Cost: 1656.00

| Ref Info: | RI 101 & 2 | Buying Party: | | Header Info & Notes: |
|---|---|---|---|---|

**Ref Info:** RI 101 & 2

00082
(MR) 0003
(PD) NEWITMWK36
(IA) 503832820

**Buying Party:**

WAL-MART DC      0078742041377
694 CRENSHAW BLVD

HOPKINSVILLE KY 42240

**Header Info & Notes:**

Trading Partner: Wal-Mart
Interchange [ISA] Control No.: 850000004
Group [GS] Control No.: 850000004
Transaction [ST] Control No.: 0010

**Dates:** DTM01 & 2

(001) 20030929
(010) 20030922

**Carrier:** TD501 & 05

(O)    YELLOW TRANSPOR

=========================IF MULTIPLE DESTINATIONS
HAV
THE SAME SHIP DATE, PLEASE SHIP TO FURTHEST
DESTINATION
FIRST AND CLOSEST DESTINATIO LAST.
======================== KEYED THROUGH SSO V8.5
DEFAULT TRAITS UPDT 08/01/03 SUBMITTED BY CREED
SCALING APPLIED

| PO102 PO103 | PO104 | PO106 & 7 | | | |
| Quantity Unit | Price** | Item | Item (Alternate 1) PO108 & 9 | Item (Alternate 2) PO110 & 11 | Casepack Info PO401, 2, & 3 |
|---|---|---|---|---|---|
| 6 EA | 276.00 | (IN) 008283211 | (UP) 859748000496 | (VN) A-33 | 1 |

*Inv. 1010*

* Information on this report is intended as an overview only. Not all EDI data is represented on this report. Please refer to the raw EDI data for complete
purchase order information.

** Price is always represented with two decimal places.

# Purchase Order: 0250869406*
## PO Date: 08/06/03

PO102 x PO104

## Total Cost: 276.00

| Ref Info: | REF01 & 2 | Buying Party: | | Header Info & Notes: | |
|---|---|---|---|---|---|
| (DP) 00082 | | WAL-MART DC | 0078742038605 | | Trading Partner: Wal-Mart |
| (MR) 0003 | | 300 VETERANS DRIVE | | Interchange [ISA] Control No.: | 850000004 |
| (VD) NEWITMWK36 | | | | Group [GS] Control No.: | 850000004 |
| (IA) 503832820 | | TOBYHANNA PA 18466 | | Transaction [ST] Control No.: | 0011 |

| Dates: | DTM01 & 2 | Carrier: | FOB01 & 05 | |
|---|---|---|---|---|
| | | | | ==========================IF MULTIPLE DESTINATIONS |
| (001) 20030929 | | (O)    YELLOW TRANSPOR | | HAV |
| (010) 20030922 | |  | | THE SAME SHIP DATE, PLEASE   SHIP TO FURTHEST |
| | | | | DESTINATION |
| | | | | FIRST AND CLOSEST DESTINATIO LAST. |
| | | | | ========================= KEYED THROUGH SSO V8.5 |
| | | | | DEFAULT TRAITS UPDT 08/01/03 SUBMITTED BY  CREED |
| | | | | SCALING APPLIED |

| PO102<br>Quantity | PO103<br>Unit | PO104<br>Price** | PO106 & 7<br>Item | PO108 & 9<br>Item (Alternate 1) | PO110 & 11<br>Item (Alternate 2) | PO401, 2, & 3<br>Casepack Info |
|---|---|---|---|---|---|---|
| 1 | EA | 276.00 | (IN) 008283211 | (UP) 859748000496 | (VN) A-33 | 1 |

\*   Information on this report is intended as an overview only.  Not all EDI data is represented on this report.  Please refer to the raw EDI data for complete
    purchase order information.

\*\*   Price is always represented with two decimal places.

# SUPPLIER AGREEMENT

Supplier Number: 503832-82-0

This Supplier Agreement ("Agreement") between the party listed below ("Supplier") and Wal-Mart Stores, Inc., Wal-Mart Stores East, LP, Wal-Mart Stores East, Inc., Wal-Mart Stores Texas, LP, Sam's West, Inc., Sam's East, inc. and affiliates (hereinafter referred to collectively as "Company") sets forth Supplier's qualifications and the general terms of the business relationship between Company and Supplier. The parties agree that all sales and deliveries of all Merchandise (as defined below) by Supplier to Company and all Orders (as defined below) by Company will be covered by and subject to the terms of this Agreement, the Standards for Suppliers (which is attached and incorporated by reference) and any Order signed or initialed (electronically or otherwise) by an Authorized Buyer (as defined below) for Company. This Agreement becomes effective on the date shown above and remains effective for the term set forth herein. The execution and submission of this Agreement does not impose upon Company any obligation to purchase Merchandise.

### General Supplier Information

Supplier's Business Classification: (Please disregard this section if Supplier is not a female or minority-owned business)

_Woman-Owned?          _Minority Owned?
_BLACK _ASIAN-PACIFIC AMERICAN _INDIAN _ESKIMO _HISPANIC _NATIVE AMERICAN _ALEUT _NATIVE HAWAIIAN

If Supplier falls within any of the above classes, and has been certified as minority-owned by a government agency or purchasing council, Supplier is qualified for the first step in the Wal-Mart Minority/Female Owned Business Development Program (the "Supplier Development Program"). Supplier agrees to provide to Company a copy of its certification as a prerequisite to qualification in the Supplier Development Program. For further information, please contact the Wal-Mart Supplier Development Office at 1-800-604-4555.

Enter the Federal Taxpayer Identification Number (TIN) of the Supplier Named Below.
If a TIN has not been issued, enter the Employer's Social Security Number.
TIN: 569723487.

Type of Payee (Check Only One): _Individual/Sole Proprietorship _Corporation _Partnership X Other

| | | | |
|---|---|---|---|
| Supplier Information: | AMERICAN PRODUCTS | President : STEVEN YPARREA | Phone: 8883482000 |
| Address: | 4845 LILLIAN HWY | Acct. Executive or V.P. Sales: MELINDA YPARREA | Phone: 8504559462 |
| Address 2: | | Acct. Contact: MELINDA YPARREA | Phone: 8504559462 |
| City/State/Zip: | PENSACOLA, FL 32506 | | |

**ADDRESS TO MAIL PAYMENT:**

| | |
|---|---|
| Supplier Name: | AMERICAN PRODUCTS |
| Address: | 4845 LILLIAN HWY |
| Address 2: | |
| City/State/Zip: | PENSACOLA, FL 32506 |
| Factor Name: | |

**ADDRESS TO SEND ORDERS:**

| | |
|---|---|
| Supplier Name: | AMERICAN PRODUCTS |
| Attention: | STEVEN YPARREA |
| Address: | 4845 LILLIAN HWY |
| City/State/Zip: | PENSACOLA, FL 32506 |

Street Address for use by delivery services other than the U.S. Mail, if not already shown in the Purchase Order address above.:

Room:

Supplier Also Doing Business As: (Attach a list to Agreement if space below is insufficient):
AMERICAN PRODUCTS
Supplier Number:

Expedite Orders: Phone: 8504559462     Extension #:

**ADDRESS TO MAIL CLAIM DOCUMENTATION:**

| | |
|---|---|
| Attention: | STEVEN YPARREA |
| Address: | 4845 LILLIAN HWY |
| City/State/Zip: | PENSACOLA, FL 32506 |
| Accounting Phone Number: 8504559462 | Extension #: 0 |
| Toll Free Number: 8883482000 | Fax Number: |

**ADDRESS TO SEND PRICING TICKETS:**

| | |
|---|---|
| Supplier Name: | |
| Attention: | |
| Address: | |
| City/State/Zip: | |

EXHIBIT "B"

Has Supplier or any related entity previously conducted business with Company? Yes X No _ If so, under what name(s)?
PRECO INC.

## STANDARD TERMS AND CONDITIONS

1. DEFINITIONS.   As used in this Agreement or any Company issued Order, the following capitalized words shall have the following meanings:
(a) "Account" shall mean any right to receive payments arising under this Agreement.
(b) "Anticipation" shall mean the intentional or unintentional payment of obligations prior to the due date which results in a monetary adjustment in amounts payable to Supplier.
(c) "Authorized Buyer" shall mean any General Merchandise Manager, Divisional Merchandise Manager, Buyer 1, 2 or 3 and replenishment manager assigned to the Wal-Mart category/department corresponding to the purchased Merchandise.
(d) "Merchandise" shall mean all products, goods, materials, equipment, articles, and tangible items supplied by Supplier to Company and all packaging, instructions, warnings, warranties, advertising and other services included therewith.
(e) "Electronic Data Interchange" ("EDI") shall mean the moving of information regarding specific business processes (invoicing,

ordering, reporting, etc.) electronically between two or more businesses. The information is transmitted electronically structured according to standards mandated by Company.

(f) "End of Month Dating" shall mean payment terms beginning at the first of the following month rather than from the receipt of merchandise, if the merchandise is received on or after the 24th of the month.

(g) "High Risk Supplier" shall mean a Supplier identified as such by Company in view of the nature of the Supplier's products, the severity of claims made against Supplier's products, the frequency of claims made, past litigation involving the Supplier's products and other factors deemed relevant by Company.

(h) "Order" shall mean any written or electronic purchase order issued by Company.

(i) "Recall" shall mean any removal of Merchandise from the stream of commerce initiated by Supplier, a government entity or Company.

(j) "Standards" shall mean the Wal-Mart Stores, Inc. Standards for Suppliers, attached hereto.

(k) "Vendor Master" shall mean the accounting department of Company responsible for control and processing of new supplier agreements and updates to existing agreements.

**2. ORDERS; CANCELLATION.** Supplier may ship only after receipt of an Order. Acceptance of an Order may be made only by shipment of the Merchandise in accordance herewith. Acceptance is expressly limited to all of the terms and conditions of such Order, including, all shipping, routing and billing instructions and all attachments and supplemental instructions delivered therewith. Shipments made contrary to Company's routing instructions will be deemed F.O.B. Destination (either store, club or warehouse). Supplier's invoice, confirmation memorandum or other writing may not vary the terms of any Order. Supplier's failure to comply with one or more terms of an Order shall constitute an event of default and shall be grounds for the exercise by Company of any of the remedies provided for in this Agreement or by applicable law. Projections, past purchasing history and representations about quantities to be purchased are not binding, and Company shall not be liable for any act or expenditure (including but not limited to expenditures for equipment, materials, packaging or other capital expenditures) by Supplier in reliance on them. Company may cancel all or any part of an Order at any time prior to shipment.

**3. SUPPLIER FINANCIAL INFORMATION; SALES TO COMPANY.** Supplier shall submit to Company with this Agreement one of the following: (1) a complete set of audited current financial statements, (2) a current Dun & Bradstreet financial report, or (3) if publicly held, Supplier's most recent annual report to shareholders and management proxy information. If Company's purchases from Supplier are anticipated by Supplier to constitute twenty percent (20%) or more of Supplier's gross annual sales on a calendar year basis, Supplier agrees to notify Company of this fact, in writing, within thirty (30) days of Supplier becoming aware of such possibility.

**4. PAYMENT TERMS; CASH DISCOUNT; ANTICIPATION.** Supplier shall transmit invoices on the same day Merchandise is shipped, but payment terms shall date from Company's receipt of the Merchandise. If Supplier selects End of Month Dating on Appendix 1 hereto, Merchandise received after the 24th of any month shall be payable as if received on the first day of the following month. Any cash discount selected by Supplier on Appendix 1 will be calculated on the gross amount of Supplier's invoice. Anticipation may be taken upon the mutual consent of the parties.

**5. SET-OFF; RESERVATION OF ACCOUNT; CREDIT BALANCE.** Company may set off against amounts payable under any Order all present and future indebtedness of Supplier to Company arising from this or any other transaction whether or not related hereto. If Company determines that Supplier's performance under an Order and/or this Agreement is likely to be impaired, Company may establish a reserve on Supplier's Account to satisfy Supplier's actual or anticipated obligations to Company arising from any such Order or this Agreement, by withholding payment of Supplier's invoices. Supplier agrees that any credit balance will be paid in cash to Company upon written request. Payments of monies owed to Company must be mailed to: Wal-Mart Stores, Inc., P.O. Box 500646, St. Louis, MO 63150-0646.

**6. NOTICE REGARDING ASSIGNMENT OF ACCOUNTS; ACCOUNT DISPUTES.** Supplier shall provide Company written notice of an assignment, factoring, or other transfer of its Account at least 30 days prior to such assignment, factoring, or other transfer taking legal effect. Such written notice shall include the name and address of the assignee/transferee, the date the assignment is to begin, and terms of the assignment, and shall be considered delivered upon receipt of such written notice by Vendor Master. Supplier may have only one assignment, factoring or transfer of its Account effective at any time. The assignment of any Account hereunder shall not affect Company's rights set forth in Section 5 of this Agreement. Supplier shall defend indemnify and hold Company harmless from any and all lawsuits, claims, demands, actions, damages (including reasonable attorney fees, court costs, obligations, liabilities or liens) arising from or related to the assignment, transfer or factoring of its Account. Supplier releases and waives any right, claim or action against Company for amounts due and owing under this Agreement where Supplier has not complied with the notice requirements of this provision. Notices required pursuant to this Section shall be mailed to: Wal-Mart Stores, Inc., Attn: Vendor Master, 1108 S.E. 10th St. Bentonville, AR 72716-0680.

Notwithstanding the foregoing, any dispute or any other circumstance, Company reserves the right to remit payment to Supplier.

**7. TAXES.** The prices set forth in any Order are deemed to include all taxes. If any manufacturer's excise or other similar or different taxes are paid on the Merchandise described in any Order and if such tax, or any part thereof, is refunded to Supplier, then Supplier shall immediately pay Company the amount of such refund.

**8. PRICE PROTECTION; PRICE GUARANTEE AND NOTICE OF PRICE INCREASES.** Supplier guarantees its prices against manufacturer's or Supplier's own price decline. If Supplier reduces its price on any Merchandise sold to Company, which Merchandise has not yet been delivered to Company by Supplier or, if consistent with Supplier's practice, which Merchandise is currently in Company's inventory (including Merchandise on hand, in warehouses and in transit), Supplier shall at Company's discretion either issue a check or give Company a credit equal to the price difference for such Merchandise, multiplied by the units of such Merchandise to be delivered by Supplier and/or currently in Company's inventory. For all Merchandise not yet shipped to Company, Supplier agrees to meet the price of any of its competitors selling comparable merchandise. If a court, regulatory agency or other government entity with jurisdiction finds that the prices on an Order are in excess of that allowed by any law or regulation of any governmental agency, the prices shall be automatically revised to equal a price which is not in violation of said law or regulation. If Company shall have made payment before it is determined that there has been a violation of this section, Supplier shall promptly refund an amount of money equal to the difference between the price paid for the Merchandise and the price which is not in violation of this section. If contemporaneously with Supplier's sale of Merchandise to the Company, Supplier sells or offers to any competitor of Company any merchandise of like grade and quality at lower prices and/or on terms more favorable than those stated on the Order, the prices and/or terms of the Order shall be deemed automatically revised to equal the lowest prices and most favorable terms at which Supplier shall have sold or shall have offered such merchandise and payment shall be made accordingly. If Company shall become entitled to such lower prices, but

shall have made payment at any prices in excess thereof, Supplier shall promptly refund the difference in price to Company. If there is a price increase, Supplier shall give Company written notice of any such increase at least sixty (60) days prior to the effective date of the increase.

**9. SUPPLIER EDI RESPONSIBILITIES.**

(a) Supplier shall electronically receive Orders and send Company invoices via EDI unless otherwise agreed to by Company in writing.
(b) Supplier shall assure that access by its employees to the EDI interchange is restricted by password to those persons authorized to contractually bind Supplier.
(c) Supplier's use of the EDI interchange acknowledges Supplier's review and acceptance of the terms and requirements for using the EDI system to contract electronically.
(d) Supplier will establish a user I.D. to identify itself, and the presence of this user I.D. in the EDI interchange will be sufficient to verify the source of the data and the authenticity of the document.
(e) Documents containing the user I.D. will constitute a signed writing, and neither party shall contest the validity or enforceability of the document on the basis of lack of a signature or sufficient identification of the parties.
(f) EDI documents or printouts thereof shall constitute originals.
(g) EDI documents will be retained by both Company and Supplier in a form that is accessible and reproducible.
(h) If Company agrees to waive the EDI requirements of this section of this Agreement, Orders may be sent via overnight mail at Supplier's expense.

**10. PURCHASE COSTS AND CONDITIONS.** Supplier is responsible for verifying the accuracy of costs, discounts, allowances and all other terms of sale on all Orders. If incorrect information exists, Supplier shall notify Company not less than twenty-four (24) hours prior to shipment. If a change is necessary, no shipment is to commence without written confirmation of the change from an authorized member of Company's merchandising department. If Merchandise ships prior to discovery of an error on the Order, the parties shall confer within forty-eight (48) hours of such discovery to determine the actions to be taken regarding the erroneous Order.

**11. SHIPPER LOAD AND COUNT RESPONSIBILITIES.** Supplier who is shipping a full truckload collect to Company will be responsible for monitoring its shipping process including closing the trailer and sealing it with a Supplier-provided seal. The seal number must be referenced and identified as the seal number on all copies of the Bill of Lading. If Supplier fails to seal the trailer, the driver will seal the trailer on Supplier's behalf. The driver will then document that seal number on the Bill of Lading before providing Supplier with its copy. If a shortage occurs, Supplier shall be liable for such shortage.

**12. DELIVERY TIME.** THE TIME SPECIFIED IN AN ORDER FOR SHIPMENT OF MERCHANDISE IS OF THE ESSENCE OF THIS AGREEMENT AND IF SUCH MERCHANDISE IS NOT SHIPPED WITHIN THE TIME SPECIFIED, COMPANY RESERVES THE RIGHT, AT ITS OPTION AND WITHOUT LIMITATION, TO CANCEL THE ORDER AND/OR REJECT ANY MERCHANDISE DELIVERED AFTER THE TIME SPECIFIED. In addition to the aforementioned remedy, Company may exercise any other remedies provided for in this Agreement or provided by applicable law, including but not limited to those remedies provided by the Uniform Commercial Code. Notwithstanding Company's right to cancel shipment, or to reject or revoke acceptance of Merchandise, Supplier agrees to inform Company immediately of any actual or anticipated failure to ship all or any part of an Order or the exact Merchandise called for in an Order on the shipment date specified. Acceptance of any Merchandise shipped after the specified shipment date shall not be construed as a waiver of any of Company's rights or remedies resulting from the late shipment.

**13. REPRESENTATIONS, WARRANTIES AND GUARANTEES.** By acceptance of an Order, Supplier represents, warrants and guarantees that:

(a) The Merchandise will be new and not used, remanufactured, reconditioned or refurbished, and will comply with all specifications contained in such Order and will be of equal or better quality as all samples delivered to Company;
(b) The Merchandise is genuine and is not counterfeit, adulterated, misbranded, falsely labeled or advertised or falsely invoiced within the meaning of any applicable local, state or federal laws or regulations;
(c) The Merchandise has been labeled, advertised and invoiced in accordance with the requirements (if applicable) of the Wool Products Labeling Act of 1939; the Fur Products Labeling Act; the Textile Fiber Products Identification Act and any other applicable local, state or federal laws or regulations, and the sale of the Merchandise by Company does not and will not violate any such laws;
(d) Reasonable and representative tests made in accordance with the requirements of the Flammable Fabrics Act (if applicable) show that the Merchandise is not so highly flammable as to be dangerous when worn by individuals;
(e) The Merchandise is properly labeled as to content as required by applicable Federal Trade Commission Trade Practice Rules, the Fair Labor Standards Act, the Federal Food, Drug and Cosmetics Act and similar local, state or federal laws, rules or regulations;
(f) The Merchandise shall be delivered in good and undamaged condition and shall, when delivered, be merchantable and fit and safe for the purposes for which the same are intended to be used, including but not limited to consumer use;
(g) The Merchandise does not infringe upon or violate any patent, copyright, trademark, trade name, trade dress, trade secret or, without limitation, any other rights belonging to others, and all royalties owed by Supplier, if any, have been paid to the appropriate licensor;
(h) All weights, measures, sizes, legends or descriptions printed, stamped, attached or otherwise indicated with regard to the Merchandise are true and correct, and conform and comply with all laws, rules, regulations, ordinances, codes and/or standards of federal, state and local governments relating to said Merchandise;
(i) The Merchandise is not in violation of any other laws, ordinances, statutes, rules or regulations of the United States or any state or local government or any subdivision or agency thereof, including but not limited to all laws and regulations relating to health, safety, environment, serial and identification numbers, labeling and country of origin designation, toxic substances, OSHA and EPA regulations, Federal Meat Inspection Act or Poultry Products Inspections Act (or any other food safety statute) and the requirements of California Proposition 65, and such Merchandise or the sale thereof by Company do not and will not violate any such laws;
(j) All Merchandise shall have an accurate twelve (12) digit manufacturer-assigned UPC number that complies with Company's UPC requirements, as amended from time to time;
(k) There is no other impediment or restriction, legal or otherwise, that limits, prohibits or prevents Supplier from selling and delivering the Merchandise to Company or limits, prohibits or prevents Company from reselling the Merchandise to its customers;
(l) The Merchandise is mined, produced, manufactured, assembled and packaged in compliance with the Standards; and
(m) The Merchandise is not transshipped for the purpose of mislabeling, evading quota or country of origin restrictions or avoiding compliance with the Standards. Where applicable, Supplier agrees to provide Company with a current, complete and accurate Material Safety Data Sheet ("MSDS") for said Merchandise.

It shall be within the sole discretion of Company to determine if Supplier has breached the above-mentioned representations, warranties and guarantees. In addition to the representations, warranties and guarantees contained in this paragraph, all other

representations, warranties and guarantees provided by law, including but not limited to any warranties provided by the Uniform Commercial Code, are specifically incorporated herein. Nothing contained in this Agreement or an Order shall be deemed a waiver of any representations, warranties or guarantees implied by law.

**14. INDEMNIFICATION.** Supplier shall protect, defend, hold harmless and indemnify Company, including its officers, directors, employees and agents, from and against any and all lawsuits, claims, demands, actions, liabilities, losses, damages, costs and expenses (including attorneys' fees and court costs), regardless of the cause or alleged cause thereof, and regardless of whether such matters are groundless, fraudulent or false, arising out of any actual or alleged:

(a) Misappropriation or infringement of any patent, trademark, trade dress, trade secret, copyright or other right relating to any Merchandise;

(b) Death of or injury to any person, damage to any property, or any other damage or loss, by whomsoever suffered, resulting or claimed to result in whole or in part from any actual or alleged use of or latent or patent defect in, such Merchandise, including but not limited to (i) any actual or alleged failure to provide adequate warnings, labelings or instructions, (ii) any actual or alleged improper construction or design of said Merchandise, or (iii) any actual or alleged failure of said merchandise to comply with specifications or with any express or implied warranties of Supplier;

(c) Violation of any law, statute, ordinance, governmental administrative order, rule or regulation relating to the merchandise, or to any of its components or ingredients, or to its manufacture, shipment, labeling, use or sale, or to any failure to provide a Material Safety Data Sheet or certification;

(d) Act, activity or omission of Supplier or any of its employees, representatives or agents, including but not limited to activities on Company's premises and the use of any vehicle, equipment, fixture or material of Supplier in connection with any sale to or service for the Company; and

(e) Any installation by Supplier of Merchandise covered by this Agreement.

Supplier shall promptly notify Company of the assertion, filing or service of any lawsuit, claim, demand, action, liability or other matter that is or may be covered by this indemnity, and shall immediately take such action as may be necessary or appropriate to protect the interests of Company, its officers, directors, employees and agents. Any and all counsel selected or provided by Supplier to represent or defend Company or any of its officers, directors, employees or agents shall accept and acknowledge receipt of Company's Indemnity Counsel Guidelines, and shall conduct such representation or defense strictly in accordance with such Guidelines. If Company in its sole discretion shall determine that such counsel has not done so, or appears unwilling or unable to do so, Company may replace such counsel with other counsel of Company's own choosing. In such event, any and all fees and expenses of Company's new counsel, together with any and all expenses or costs incurred on account of the change of counsel, shall be paid or reimbursed by Supplier as part of its indemnity obligation hereunder. Company shall at all times have the right to direct the defense of, and to accept or reject any offer to compromise or settle, any lawsuit, claim, demand or liability asserted against Company or any of its officers, directors, employees or agents. The duties and obligations of Supplier created hereby shall not be affected or limited in any way by Company's extension of express or implied warranties to its customers.

**15. RECALLS.** If Merchandise is the subject of a Recall, whether initiated by Supplier, Company or a government entity (including the issuance of safety notices), Supplier shall be responsible for all matters and costs associated with the Recall, including but not limited to:

(a) Consumer notification and contact;

(b) All expenses and losses incurred by Company in connection with such Recall (and where applicable, any products with which the Recalled Merchandise has been packaged, consolidated or commingled), including but not limited to refunds to customers, lost profits, transportation costs and all other costs associated therewith; and

(c) Initial contact and reporting of the Recall to any government agency having jurisdiction over the affected Merchandise.

If a government agency initiates any inquiry or investigation relating to the Merchandise or similar goods manufactured or supplied by Supplier, Supplier shall notify Company immediately thereof and take reasonable steps to resolve the matter without exposing Company to any liability or risk.

**16. LIMITATION OF DAMAGES.** In no event shall Company be liable for any punitive, special, incidental or consequential damages of any kind (including but not limited to loss of profits, business revenues, business interruption and the like), arising from or relating to the relationship between Supplier and Company, including all prior dealings and agreements, or the conduct of business under or breach of this Agreement or any Order, Company's cancellation of any Order or Orders or the termination of business relations with Supplier, regardless of whether the claim under which such damages are sought is based upon breach of warranty, breach of contract, negligence, tort, strict liability, statute, regulation or any other legal theory or law, even if Company has been advised by Supplier of the possibility of such damages.

**17. REMEDIES.** Supplier's failure to comply with any of the terms and conditions of this Agreement or any Order shall be grounds for the exercise by Company of any one or more of the following remedies:

(a) Cancellation of all or any part of any undelivered Order without notice, including but not limited to the balance of any remaining installments on a multiple–shipment Order;

(b) Rejection (or revocation of acceptance) of all or any part of any delivered shipment. Upon rejection or revocation of acceptance of any part of or all of a shipment, Company may return the Merchandise or hold it at Supplier's risk and expense. Payment of any invoice shall not limit Company's right to reject or revoke acceptance. Company's right to reject and return or hold Merchandise at Supplier's expense and risk shall also extend to Merchandise which is returned by Company's customers. Company may, at its option, require Supplier to grant a full refund or credit to Company of the price actually paid by any customer of Company for any such item in lieu of replacement with respect to any item. Company shall be under no duty to inspect the Merchandise, and notice to Supplier of rejection to Company by its customers. In respect of any Merchandise rejected (or acceptance revoked) by Company, there shall be charged to Supplier all expenses incurred by Company in (i) unpacking, examining, repacking and storing such Merchandise (it being agreed that in the absence of proof of a higher expense that the Company shall claim an allowance for each rejection at the rate of 10% of the price for each rejection made by Company) and (ii) landing and reshipping such Merchandise. Unless Company otherwise agrees in writing, Supplier shall not have the right to make a conforming delivery within the contract time;

(c) Termination of all current and future business relationships;

(d) Assessment of monetary fines as determined in Company's reasonable discretion;

(e) Recovery from Supplier of any damages sustained by Company as a result of Supplier's breach or default; and

(f) Buyer's remedies under the Uniform Commercial Code and such other remedies as are provided under applicable law.

These remedies are not exclusive and are in addition to all other remedies available to Company at law or in equity.

**18. INSURANCE REQUIREMENTS.** Supplier is required to obtain and maintain the following insurance coverage from a carrier acceptable to Company in the amounts and with the conditions listed below:

a) Commercial General Liability, including Contractual, Personal & Advertising Injury, Products and Completed Operations coverage, with certificate holder named as Additional Insured as evidenced by attached endorsement or blanket additional insured coverage provided by the policy. Policy shall be occurrence based with limits of no less than $5,000,000 per occurrence, without any aggregate limits or $50,000,000 in the aggregate. Defense costs shall not apply against coverage limits. High Risk Suppliers (as defined by Company) shall maintain policy limits of not less than $10,000,000 per occurrence without any aggregate limits or $100,000,000 in the aggregate.

b) Statutory Workers' Compensation Coverage for a Supplier whose employees will be entering Company's premises, with $1,000,000 in employers' liability coverage and a waiver of subrogation where Permitted By Law.

c) Automobile Coverage, with certificate holder named as Additional Insured as evidenced by attached endorsement or blanket additional insured coverage provided by the policy, for a Supplier whose employees or agents will be driving on Company's premises or making delivery to Company's premises shall be occurrence based with limits of no less than $5,000,000 per occurrence, without any aggregate limits or $50,000,000 in the aggregate. Defense costs shall not apply against coverage limits.

d) Supplier shall provide at least thirty (30) days' written notice prior to any cancellation of any policy of insurance maintained hereunder, and each such policy shall obligate the insurer to provide at least thirty (30) days' written notice to Company in advance of any contemplated cancellation or termination thereof.

e) Supplier's insurance shall be considered primary, non-contributory and not excess coverage.

A copy of Supplier's current Certificate of Insurance with the following requirements must be submitted with this Agreement:
· Certificate Holder should read: WAL-MART STORES, INC., ITS SUBSIDIARIES & ITS AFFILIATES, 702 SW 8th Street, Bentonville, AR 72716-0145, Attn: Risk Management
· Renewals of Certificates of Insurance must be submitted prior to expiration of insurance coverage
· Existing Suppliers must include Supplier Number on Certificate of Insurance.
· Please direct any questions regarding your insurance to Risk Management at (479) 277-1658 or (479) 277-2890.

SUPPLIER CONTACT FOR PRODUCT LIABILITY CLAIMS:

| | | | |
|---|---|---|---|
| Name: | AMERICAN PRODUCTS | Insuring Company: GILMORE INSURANCE & BONDING IN | |
| Address: | 4845 LILLIAN HWY | Telephone: 8502443387 | Extension #: 0 |
| City/State/Zip: | PENSACOLA, FL 32508 | | |
| Telephone: | 8504559462 | Extension #: 0 | |
| Fax Number: | | e-mail: | |

**19. FORCE MAJEURE.** If any place of business or other premises of Company shall be affected by lockouts, strikes, riots, war, acts of terrorism, fire, civil insurrection, flood, earthquake or any other casualty or cause beyond Company's control, which might reasonably tend to impede or delay the reception, handling, inspecting, processing or marketing of the Merchandise covered by this Agreement, Company may, at its option, cancel all or any part of the undelivered Order hereunder by giving written notice to Supplier which notice shall be effective upon mailing.

**20. ASSIGNMENT.** Except as specifically set forth in Section 6, no part of this Agreement or of any Order shall be assignable by Supplier without the written consent of Company, and Company shall not be obligated to accept a tender of performance by any assignee, unless Company shall have previously expressly consented in writing to such an assignment.

**21. PUBLICITY; USE OF NAME AND INTELLECTUAL PROPERTY.** Supplier shall not refer to Company in any advertising or published communication without the prior written approval of Company. Supplier shall not use, or allow to be used, Company's name, logo, trademarks, service marks, patents, copyrights or trade dress without the prior written approval of Company. Company may use Supplier's name, logo, trademarks, service marks, patents, copyrights and trade dress in connection with Company's marketing of the Merchandise.

**22. COMPLIANCE WITH STANDARDS FOR SUPPLIER.** Supplier agrees to comply with the obligations stated in the Standards for Suppliers. Company reserves the right to cancel any outstanding Order, refuse any shipments and otherwise cease to do business with Supplier if Supplier fails to comply with any terms of the Standards for Suppliers or if Company reasonably believes Supplier has failed to do so.

**23. SEVERABILITY; WAIVER.** At the option of Company, no finding that a part of this Agreement is invalid or unenforceable shall affect the validity of any other part hereof. Company's failure to enforce at any time any provision of this Agreement will not be construed as a waiver of such provision or of any rights thereafter to enforce such provision. Any waiver by Company of any of the terms and conditions of this Agreement or any Order must be in writing signed by an authorized representative of Company.

**24. FORUM SELECTION; CHOICE OF LAW; STATUTE OF LIMITATIONS.** This Agreement, any and all Orders, and any and all disputes arising thereunder or relating thereto, whether sounding in contract or tort, shall be governed by and construed in accordance with the laws of the State of Arkansas without regard to the internal law of Arkansas regarding conflicts of law, and the federal and/or state courts of Benton and Washington County, Arkansas, shall have exclusive jurisdiction over any actions or suits relating thereto. The parties mutually acknowledge and agree that they shall not raise, and hereby waive, any defenses based upon venue, inconvenience of forum or lack of personal jurisdiction in any action or suit brought in accordance with the foregoing. Any legal action brought by Supplier against Company with respect to this Agreement or any Orders shall be filed in one of the above referenced jurisdictions within two (2) years after the cause of action arises or it shall be deemed forever waived. The parties acknowledge that they have read and understand this clause and agree willingly to its terms.

**25. ATTORNEY FEES AND INTEREST OBLIGATIONS.** Company reserves the right to charge Supplier interest at the rate of 12% per annum or such lower rate as may be permitted under applicable law for any obligations owed by Supplier to Company, including debit balances not paid within thirty (30) days after due, until such amounts are paid in full, and Company will be entitled to recover from Supplier its attorneys' fees and costs incurred in collecting any past-due obligation.

**26. NOTICES.** Unless otherwise specifically provided for herein, any notice or demand which under the terms of this Agreement or under any statute must or may be given or made shall be in writing and shall be given or made by overnight express service addressed as follows: if to Company: Wal-Mart Stores, Inc., Attn: General Merchandise Manager (identify department or category), 702 SW 8th Street, Bentonville, AR 72716. If to Supplier: to Supplier's address set forth above. Such notice or demand shall be deemed given on the second (2nd) business day after deposit of such notice or demand with the overnight express service. The above addresses may be changed at any time by giving prior written notice as provided above.

**27. TERM OF AGREEMENT.** This Agreement ends one year after the Effective Date. This Agreement may only be renewed or extended by an agreement signed by an authorized officer of Company and Supplier. Supplier and Company are under no obligation to extend the term of this Agreement or to renew this Agreement. Neither Supplier nor Company should take any actions in reliance upon this Agreement being extended or renewed. Neither party shall be responsible for any costs incurred by the other in anticipation of the extension or renewal of this Agreement.

**28. INFORMATION SECURITY.** Supplier represents that it currently follows industry best practices as a means to prevent any compromise of its information systems, computer networks, or data files ("Systems") by unauthorized users, viruses, or malicious computer programs which could in turn be propagated via computer networks, email, magnetic media or other means to Company. Supplier agrees to immediately give Company notice if the security of its Systems are breached or compromised in any way.

Supplier agrees to apply appropriate internal information security practices, including, but not limited to, using appropriate firewall and anti-virus software; maintaining said countermeasures, operating systems, and other applications with up-to-date virus definitions and security patches; installing and operation security mechanisms in the manner in which they were intended sufficient to ensure the Company will not be impacted nor operations disrupted; and permitting only authorized users access to computer systems, applications, and Retail Link.

Supplier specifically agrees to: use up-to-date anti-virus tools to remove known viruses and malware from any email message or data transmitted to Company; prevent the transmission of attacks on Company via the network connections between Company and the Supplier; and prevent unauthorized access to Company systems via the Supplier's networks and access codes.

In accordance with all applicable US and International privacy laws, Supplier agrees to safeguard confidential protected individually identifiable personal information (health, financial, identity) which are received, transmitted, managed, processed, etc. and to require subcontractor or agent to meet these same security agreements.

Financial service suppliers, who handle personally identifiable financial information of our customers agree to maintain a current SAS70 Type II audit.

**29. SURVIVAL OF PROVISIONS.** The provisions of this Agreement which by their nature are intended to survive termination of this Agreement (including but not limited to representations, warranties, guarantees, indemnifications, payment of obligations, remedies, forum selection and statute of limitations) shall survive its termination.

The parties hereto agree that this Agreement, the Standards and any Order constitute the full understanding of the parties, a complete allocation of risks between them and a complete and exclusive statement of the terms and conditions of their agreement. All prior agreements, negotiations, dealings and understandings, whether written (including any electronic record) or oral, regarding the subject matter hereof, are superseded by this Agreement. Any changes in this Agreement shall be in writing and executed by both parties. Furthermore, if there is a conflict of terms between this Agreement and an Order, this Agreement shall be the controlling document.

We (Company) will never assume that you (Supplier) will be willing to extend or renew this Agreement or to accept any specific volume of Orders. Conversely, we urge you never to assume that this Agreement will be renewed or extended by us or that we will issue Orders for specific volume of Merchandise, even if your impression is based on discussions you may have had with Company representatives. No Company representative has authority to renew or extend this Agreement except in a writing signed by an authorized officer of Company, and no Company representative has authority to order Merchandise except an Authorized Buyer through an Order issued pursuant to and subject to the terms of this Agreement.

## WAL–MART STORES, INC.

### STANDARDS FOR SUPPLIERS

Wal-Mart Stores, Inc. ("Wal-Mart") has enjoyed success by adhering to three basic principles since its founding in 1962. The first principle is the concept of providing value and service to our customers by offering quality merchandise at low prices every day. Wal-Mart has built the relationship with its customers on this basis, and we believe it is a fundamental reason for the Company's rapid growth and success. The second principle is corporate dedication to a partnership between the Company's associates (employees), ownership and management. This concept is extended to Wal-Mart's Suppliers who have increased their business as Wal-Mart has grown. The third principle is a commitment by Wal-Mart to the communities in which its stores and distribution centers are located.

Wal-Mart strives to conduct its business in a manner that reflects these three basic principles and the resultant fundamental values. Wal-Mart requires that its Suppliers, including Suppliers outside the United States, conform to standards of business practices, which are consistent with the three principles described above. More specifically, Wal-Mart expects its Suppliers to comply with the following standards:

**1. COMPLIANCE WITH APPLICABLE LAWS.** All Suppliers shall comply with the legal requirements and standards of their industry under the national laws of the countries in which the Suppliers are doing business, including the labor and employment laws of those countries, and any applicable U.S. laws. Should the legal requirements and standards of the industry conflict, Suppliers must, at a minimum, be in compliance with the legal requirements of the country in which the products are manufactured. If, however, the industry standards exceed the country's legal requirements, Wal-Mart will favor Suppliers who meet such industry standards. Suppliers shall comply with all requirements of all applicable governmental agencies. Necessary invoices and required documentation must be provided in compliance with the applicable law. Suppliers shall warrant to Wal-Mart that no merchandise sold to Wal-Mart infringes the patents, trademarks or copyrights of others and shall provide to Wal-Mart all necessary licenses for selling merchandise sold to Wal-Mart, which is under license from a third party. All merchandise shall be accurately marked or labeled with its country of origin in compliance with applicable laws and including those of the country of manufacture. All shipments of merchandise will be accompanied by the requisite documentation issued by the proper governmental authorities, including but not limited to Form A's, import licenses, quota allocations and visas and shall comply with orderly marketing agreements, voluntary restraint agreements and other such agreements in accordance with applicable law. The commercial invoice shall, in English and in any other language deemed appropriate, accurately describe all the merchandise contained in the shipment, identify the country of origin of each article contained in the shipment, and shall list all payments, whether direct or indirect, to be made for the merchandise, including, but not limited to any assists, selling commissions or royalty payments. Backup documentation, and any Wal-Mart required changes to any documentation, will be provided by Suppliers promptly. Failure to supply complete and accurate information may result in cancellation or rejection of the goods.

**2. EMPLOYMENT.** Wal-Mart is a success because of its associates and a strong level of teamwork has developed within the Company. Wal-Mart expects the spirit of its commitment to be reflected by its Suppliers with respect to their employees. At a minimum, Wal-Mart expects its Suppliers to meet the following terms and conditions of employment:

**a. Compensation.** Suppliers shall fairly compensate their employees by providing wages and benefits which are in compliance with the national laws of the countries in which the "Suppliers" are doing business or which are consistent with the prevailing local standards in the countries in which the "Suppliers" are doing business, if the prevailing local standards are higher. Suppliers shall fully comply with the wage and hour provisions of the Fair Labor Standards Act, if applicable, and shall use only subcontractors who comply with this law, if applicable.

**b. Hours of Labor.** "Suppliers" shall maintain reasonable employee work hours in compliance with local standards and applicable national laws of the countries in which the Suppliers are doing business. Employees shall not work more hours in one week than allowable under applicable law, and shall be properly compensated for overtime work. We expect Suppliers to comply with the statutory requirements for working hours for employees and we will not use suppliers who, on a regularly scheduled basis, require employees to work in excess of the statutory requirements without proper compensation as required by applicable law. Employees should be permitted reasonable days off, breaks, lunch periods and bathroom breaks.

**c. Forced Labor.** Forced labor will not be tolerated by Wal-Mart. Suppliers shall maintain employment on a voluntary basis. Wal-Mart will not accept products from Suppliers who utilize in any manner forced labor in the manufacture or in their contracting, subcontracting or other relationships for the manufacture of their products.

**d. Child Labor.** Wal-Mart will not tolerate the use of child labor in the manufacture of products it sells. Wal-Mart will not conduct business with Suppliers that utilize in any manner child labor in their contracting, subcontracting or other relationships for the manufacture of their products. No person shall be employed at an age younger than 15 (or 14 where the law of the country of manufacture allows) or younger than the age for completing compulsory education in the country of manufacture where such age is higher than 15.

**e. Discrimination/Human Rights.** Wal-Mart recognizes that cultural differences exist and different standards apply in various countries, however, we believe that all terms and conditions of employment should be based on an individual's ability to do the job, not on the basis of personal characteristics or beliefs. Wal-Mart expects Suppliers to have a social and political commitment to basic principles of human rights and to not discriminate against their employees in hiring practices or any other term or condition of work, on the basis of race, color, national origin, gender, religion, disability, or other similar factors.

**3. WORKPLACE ENVIRONMENT.** Wal-Mart maintains a safe, clean, healthy and productive environment for its associates and expects the same from its Suppliers. Suppliers shall furnish employees with safe and healthy working conditions. Factories working on Wal-Mart merchandise shall provide adequate medical facilities, fire exits and safety equipment, well-lighted and comfortable workstations, clean restrooms, and adequate living quarters where necessary. Workers should be adequately trained to perform their jobs safely. Wal-Mart will not do business with any Supplier that provides an unhealthy or hazardous work environment or which utilizes physically or psychologically abusive disciplinary practices.

**4. CONCERN FOR THE ENVIRONMENT.** We believe it is our role to be a leader in protecting our environment. We encourage our customers and associates to always Reduce, Reuse, and Recycle. We also encourage our Suppliers to reduce excess packaging and to use recycled and non-toxic materials whenever possible. We will favor Suppliers who share our commitment to the environment.

**5. REGULAR INSPECTION AND CERTIFICATION BY SUPPLIER.** Supplier shall designate, on a copy of the Wal-Mart Supplier Inspection and Certification Form, one or more of its officers to inspect each of its facilities which produce merchandise sold to Wal-Mart. Such inspections shall be done on at least a quarterly basis to insure compliance with the standards, terms and conditions set forth herein. The Supplier Officer designated to perform such inspections shall certify to Wal-Mart following each inspection (i) that he or she performed such inspection, and (ii) that the results reflected on such compliance inspection form are true and correct. All charges related to the inspection and certification of such facilities shall be paid fully by the Supplier. Supplier shall maintain the completed Inspection and Certification Forms on file at each facility and shall make the forms readily accessible to Wal-Mart, its agents or employees when requested. Any Supplier which fails or refuses to comply with these standards is subject to immediate cancellation of any and all outstanding orders, refusal or return of any shipment, and termination of its business relationship with Wal-Mart.

**6. RIGHT OF INSPECTION.** To further assure proper implementation of and compliance with the standards set forth herein, Wal-Mart or a third party designated by Wal-Mart reserves the right to undertake affirmative measures, such as on-site inspection of production facilities, to implement and monitor said standards. Any Supplier who fails or refuses to comply with these standards is subject to immediate cancellation of any and all outstanding orders, refusal or return of any shipment, and termination of its business relationship with Wal-Mart.

**7. WAL-MART GIFT AND GRATUITY POLICY.** Wal-Mart has a very strict policy which forbids and prohibits the solicitation, offering or acceptance of any gifts, gratuities or any form of "pay off" or facilitation fee as a condition of doing business with Wal-Mart, as a form of gratitude, or as an attempt to gain favor or accept merchandise or services at a lesser degree than what was agreed. Wal-Mart believes in delivering and receiving only the total quantity agreed. Any Supplier, factory or manufacturer who violates such policy by offering or accepting any form of gift or gratuity to any associate, employee, agent or affiliate of Wal-Mart Stores, Inc. will be subject to all loss of existing and future business, regardless of whether the gift or gratuity was accepted. In addition, a Supplier, factory or manufacturer who violates such policy will be reported to the appropriate governmental authorities of the Supplier's respective and affiliated countries. Failure to report such information will result in severe action being taken by Wal-Mart against such Supplier, trading company or factory including but not limited to termination of all existing and future business relationships and monetary damages.

**8. CONFIDENTIALITY.** Supplier shall not at any time during or after the term of this Agreement disclose to others and will not take or use for its own purposes or the purpose of others any trade secrets, confidential information, knowledge, designs, data, know-how, or any other information considered logically as "confidential." Supplier recognizes that this obligation applies not only to technical information, designs and marketing, but also to any business information, including information related to purchases and sales, that Wal-Mart treats as confidential. Any information that is not readily available to the public shall be considered to be a trade secret and confidential. Upon termination of this Agreement for any cause, Supplier shall return all items belonging to Wal-Mart and all copies of documents containing Wal-Mart's trade secrets, confidential information, knowledge, data or know-how in Supplier's possession or under Supplier's control.

**9. ACKNOWLEDGMENT OF STANDARDS.** As an officer or duly authorized representative of my company, a Supplier of Wal-Mart, I have read the principles and terms described in this document and understand my company's business relationship with Wal-Mart is based upon said company being in full compliance with these principles and terms. I further understand that failure by a Supplier to abide by any of the terms and conditions stated herein may result in the immediate cancellation by Wal-Mart of all outstanding orders with that Supplier and refusal by Wal-Mart to continue to do business in any manner with said Supplier. I am signing this statement as a corporate representative of my company, to acknowledge, accept and agree to abide by the standards, terms and conditions set forth herein between my company and Wal-Mart. I hereby affirm that all actions, legal and corporate, to make this Standards for Suppliers binding and enforceable against my company have been completed.

STANDARDS FOR SUPPLIERS  A copy of these Standards for Suppliers shall be posted in a location visible to all employees at all facilities that manufacture products for Wal-Mart Stores, Inc. and its affiliates. Any person with knowledge of a violation of any of these standards by a Supplier or a Wal-Mart associate should call 1-800-WM-ETHIC (1-800-963-8442) (in countries other than the United States, dial AT&T's U.S.A. Direct Number first) or write to: Wal-Mart Stores, Inc., Business Ethics Committee, 702 SW 8th St., Bentonville, AR 72716-8095.

Department No. 82
## STANDARD PURCHASE ORDER ALLOWANCE

Effective Date: //

These allowances apply to each Purchase Order Issued, unless otherwise agreed to by the parties.

| CODE | ALLOWANCE | DISC % | SPECIAL INSTRUCTIONS | HOW PAID | | | WHEN PAID | | | | |
|------|-----------|--------|---------------------|----|----|----|----|---|---|---|---|
| | | | | OI | CM | CK | EI | M | Q | S | A |
| SA | New Store/Club Discount (% Applied to each line item for each new store P.O.) | | | | | | | | | | |
| OL | New Store/Club Discount (% Represents contribution of total business to New Store Program.) | | | | | | | | | | |
| NW | New Distribution Center | | | | | | | | | | |
| WA | Warehouse Allowance | | | | | | | | | | |
| QD | Warehouse Distribution Allow (Order Type 33 Only) | | | | | | | | | | |
| DM | Defective/Returned Mdse. Allowance – Not applicable in Puerto Rico. (When selected must mark option 3 under warranty policy.) | | | | | | | | | | |
| SD | Soft Goods Defective Allow | | | | | | | | | | |
| PA | Promotional Allowance | | | | | | | | | | |
| VD | Volume Discount | | | | | | | | | | |
| FA | Freight Allowance | | | | | | | | | | |
| AA | Advertising Allowance | | | | | | | | | | |
| TR | TV/Radio Media Allowance | | | | | | | | | | |
| DA | Display/Endcap Allowance | | | | | | | | | | |
| EB | Early Buy Allowance | | | | | | | | | | |
| HA | Handling Allowance | | | | | | | | | | |

OI–Off Invoice; CM–Credit Memo; CK–Check; EI–Each Invoice; M–Monthly; Q–Quarterly; S–Semi–Annually; A–Annually;

## APPENDIX

This Appendix constitutes and is part and parcel of the Supplier Agreement. The terms of the Supplier Agreement are binding and enforceable as to this Appendix.

## PAYMENT TERMS

_0_ Cash Discount –-Enter whole percents
_0_ Cash Discount Days Available(Must be filled in if a Cash Discount is used)
_30_ Net Payment Days Available(Must be at least one day more than Cash Discount Days Available)

NEW STORE/WHSE TERMS IF DIFFERENT THAN REGULAR TERMS:

End Of Month Dating__ Yes _X_ No

## SHIPPING TERMS

**FREIGHT TERMS**
__ Collect – F.O.B Supplier
X Prepaid – F.O.B Company
__ Prepaid To consolidator – F.O.B. Company's Consolidator

MINIMUM FOR PREPAID FREIGHT TERMS
_0_ Pounds
_0_ Cases/Units
_0_ Whole Dollars

No freight charges are to be added to invoices. Refer to the current Routing Guide for detailed instructions.

## CONDITION OF SALE

__ Guaranteed Sales  __ Consignment  __ Preticketing  __ Prepricing  __ Stock Balancing  __ Shelf Labels
X Point of Sale (Pay from Scan)  __ Other

Y 2006

**RETURN POLICY.(SUPPLIER MUST CHOOSE ONE OPTION BELOW AND COMPLETE THE NECESSARY INFORMATION.)**
Supplier will be charged current merchandise costs plus a 10% handling charge for all returned merchandise except where a Customer Satisfaction Merchandise Allowance is given by Supplier. Returned merchandise will be shipped with return freight charges billed back to Supplier. Returns are F.O.B. Purchaser.

___SUPPLIER OPTION #1: SUPPLIER WANTS RETURNED MERCHANDISE SENT TO THEM:
 ___ Returned merchandise will be sent to Supplier direct from each store.
 Permanent return authorization #: _____  if required for shipment. If automatic return is not possible, a toll free number should be provided or Supplier must accept Purchaser's collect calls to secure return authorization over the phone.
 Phone: _____  Extension #: _____  Contact: _____

 ___ Returned merchandise will be sent from store locations to the Return Center and sent to Supplier.
 Permanent return authorization #: _____  , if required for shipment. If automatic return is not possible, a toll free number must be provided or Supplier must provide a fax number and a contact name.
 Phone: _____  Extension #: _____  Contact: _____

 Permanent return authorization #: _____
 RETURN SHIPPING ADDRESS: Address: _____ City: _____ State: _____ Zip: _____

 Special Instructions:


___SUPPLIER OPTION #2: SUPPLIER DOES NOT WANT RETURNED MERCHANDISE SENT TO THEM.
 ___ Returned merchandise must be disposed of by the individual store; OR
 ___ Returned merchandise will be sent from store locations to the Return Center for disposal.[Choose one of the following three.]
  A.___ Return Center may dispose of returned merchandise through salvage outlets or recycling operations, without accounting for the proceeds of such disposal;
  B.___ Return Center must destroy returned merchandise. (Supplier may be charged for any additional costs of destruction.);
  C.___ Return Center may donate returned merchandise to charity.

 Special Instructions:


___SUPPLIER OPTION #3: CUSTOMER SATISFACTION MERCHANDISE ALLOWANCE:
 Supplier will allow the Customer Satisfaction Merchandise Allowance stated in this agreement. The percentage must be adequate to cover all returned merchandise, including but not limited to defective/returned merchandise, or additional claims will be filed by the Return Center at our fiscal year end.
 ___ Return Center may dispose of returned merchandise through salvage outlets or recycling operations, without accounting for the proceeds of such disposal;
 ___ Return Center must destroy returned merchandise. (Supplier may incur additional handling charges to cover costs of destruction.);
 ___ Returned merchandise will be sent from store locations to the Return Center and sent to Supplier. If Supplier requests the returned merchandise be sent to them, it will be charged a 10% handling charge and the merchandise will be shipped with return freight charges billed back to Supplier; OR
 ___ Return Center may donate Return Merchandise to charity.

 Permanent return authorization #: _____
 RETURN SHIPPING ADDRESS: Address: _____ City: _____ State: _____ Zip: _____

 Special Instructions:


## SHIPPING INSTRUCTIONS

Supplier will ship all merchandise in accordance with the instructions contained in Company's Routing Guide. Supplier acknowledges it has received a copy of the Routing Guide. Each purchase order will show a routing which is determined by Company's Traffic Department. Supplier is liable for the excess transportation cost if the designated routing is not followed. If Supplier has a question concerning the routing selected, Supplier must call Company's Traffic Department before releasing the shipment at the following number: (479) 273-6359

| SHIPPING POINT | SHIPPING STATE |
|---|---|
| PENSACOLA | FL |


Y 2007

# WAL★MART ®



EXHIBIT
"C"

■ BUSINESS CONFIDENTIAL © 2001 WAL-MART STORES ■

# Table of Contents

........ii

**Preface** ........ 1-1
**General Information** ........ 1-1
    Key Phone Information ........ 1-1
    Addresses ........ 1-4
    Division Listings ........ 1-5
    Departmental Listings ........ 1-7
    Name & Address Changes ........ 1-8
    Gift & Gratuities Policy ........ 1-9
    Standards for Suppliers ........ 1-12
    Inspection Certification Form ........ 1-14
    Certification By Officer Form ........ 1-15
    Supplier Insurance Requirements ........ 1-16
    Certificate of Insurance ........ 1-17
    Supplementary Explanation of "Additional Insured" ........ 1-18
    Explanation of Wal-Mart Store Purchase Orders ........ 1-19
    SAM'S Club Purchase Orders ........ 1-20
    International Purchase Order Exceptions ........ 

**Supplier Agreement** ........ 2-1
    Completing the Supplier Agreement ........ 2-3
    Purchase Order Terms & Conditions ........ 

**UPC Requirements** ........ 3-1
    UCC Membership ........ 3-1
    UPC (A) Structure ........ 3-2
    UPC Version (E) ........ 3-2
    UPC (A) & EAN-13 ........ 3-2
    EAN-13 and EAN-8 ........ 3-3
    Bar Code Size ........ 3-4
    Contrast ........ 3-4
    Bar Code Placement ........ 3-5
    Code Assignment ........ 3-5
    Multiple UPCs ........ 3-5
    Velocity Coding ........ 3-5
    Suffix Codes ........ 3-5
    Price Changes ........ 3-5
    In-House Private Labels ........ 3-5
    Re-issuing UPCs ........ 3-5
    Promotional Packs ........ 3-6
    Free Items ........ 3-6
    Holiday Packs ........ 3-6
    Common UPC Problems ........ 3-6
    UPC Supplier Chargebacks ........ 3-7
    Failure Consequences ........ 3-7
    Additional UPC Information ........ 

**General Carton Quality & Marking Requirements** ........ 4-1
    DC Handling ........ 4-2
    Shrink-wrap ........ 4-2
    Palletized Merchandise ........ 4-3
    Carton Markings ........ 4-3
    Shipping Label Requirements ........ 4-4
    Product Identification Information ........ 4-6
    Non-Standard Shipping Carton Marking (Masterpacks) ........ 4-7
    SCC-14 Shipping Container Bar Code ........

ASNI SSCC-18 Serial Shipping Container Code . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4-8
Pallet vs. Slip-sheet vs. Floor Loading for Full Truckload Shipments . . . . . . . . . . . . . . . .4-9
Trailer Weights & Cubes . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4-9
Loading Patterns . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4-10
Unitized Stacking . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4-11
Weight & Size Considerations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4-12
MSDS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4-12
DSDC Cartons and the UCC-128 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4-12

**EDI Requirements**
Need for Standards . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5-1
Electronic Services . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5-1
EDI Invoicing & Payables . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5-1

**Shipping & Routing Instructions**
Information Needed for Keying In Purchase Orders . . . . . . . . . . . . . . . . . . . . . . . . . . . .6-1
Request for Routing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6-1
When to Key Purchase Orders . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6-2
Loading . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6-2
Bills of Lading . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6-2
Packing Slips . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6-3
LTL Common Carrier Shipments . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6-3
Free Time for Loading . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6-3
Allocated Purchase Orders . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6-4
International Stores . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6-4
Tab Logistics
    Tab Purchase Orders . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6-6
    Bills of Lading . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6-6
    Packing slips . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6-6
    Routing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6-6
    LTL Shipments . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6-6
    Truckload Shipments . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6-7
    Ship To Arrive By Process . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6-7
    Cover Sheet . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6-7
    Direct Dedicated Suppliers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6-7
Warehouse Consolidator's Guide
    Carton Markings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6-8
    Master Bills . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6-8
    Shipment Loading . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6-8
    Pick-up Carrier . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6-8
    Alaska, Hawaii, Mexico, Puerto Rico, Brazil, Argentina, China & Korea . . . . . . . . . . . .6-9
    Ship-to Address For Materials . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6-10
Shipping Hazardous Materials
    Regulated in Transportation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6-11
    Packaging the Material for Shipment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6-11
Small Package Instructions
    Small Package Guidelines . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6-13
    Direct-to-Store Shipments to Alaska & Hawaii . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6-13
Supplier Claims for Freight Charger
    Handling Fee . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6-15
    Shipping Collect vs. Prepaid . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6-15
    Mis-routing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6-15
    Truck Ordered, Not Used . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6-15
    Detention . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6-15
    Sort & Segregation Charges . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6-15
    Alaskan & Hawaiian Prepaid Consolidated Shipments . . . . . . . . . . . . . . . . . . . . . . .6-15
    Other Freight & Transportation Charges . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6-16

Corporate Traffic Claims Contact . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6-16

## Supplier Guidelines Necessary to Insure Timely Frieght Pick-Up

Request for Routing and Routing Status . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7-3
Backhaul Betty - Voice Response System . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7-5
Guidelines for Using Vendor Vanna . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7-7
SAM'S CLUB Shipping and Routing Instruction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7-8
SAM'S CLUB New Club Information . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7-13

## Grocery Distribution Center Shipping, Routing & Receiving

Inbound Procedures
    Over-the-Road Appointments . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8-1
Drop Loads . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8-1
Wal-Mart Distribution Center Appointment Rules & Regulations . . . . . . . . . . . . . . . . .8-2
Outbound Procedures
    Appointment Trailers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8-3
    Drop Trailer Pick-up . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8-3
    Over-the-Road Trailers (Return to Carrier/Not Our Freight) . . . . . . . . . . . . . . . . .8-3
Driver Unloading Responsibilities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8-3
Unloading Service Rates
    Method of Payment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8-3
    Exceptions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8-4
    Unloading Allowance Ticket . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8-4
Pallets & Pallet Exchange . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8-5
Expectations for Inbound Receipts
    Quality Requirements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8-5
Shipping & Loading
    Bills of Lading . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8-6
    Packing Slips . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8-6
Routing
    LTL Common Carrier Shipments . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8-6
    Truckload Shipments . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8-7
    Temperature Guidelines . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8-7
    Product Specific Information . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8-13
    Grocery DC Address . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8-16
    Holiday Schedule . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9-17

## Accounts Payable

Invoicing
    General Merchandise Distribution Center Invoices . . . . . . . . . . . . . . . . . . . . . . .9-1
    Credit Memos . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9-1
    Direct-to-Store/Club Suppliers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9-1
    SAM'S Clubs DTC Suppliers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9-1
    Puerto Rico & Hawaii Locations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9-1
    Grocery Distribution Center Invoices . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9-2
    Grocery EDI Invoices . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9-2
Match Rate . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9-2
Line Level Matching System . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9-2
Freight Terms
    FOB-Supplier . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9-3
    FOB-Wal-Mart . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9-3
Carrier Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9-4
Return Center Accounting . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9-4
Post Audit Department . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9-4
Discrepancies
    General Information . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9-4
    Discrepancy Item Sheet . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9-5
    Puerto Rico . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9-6

        Supplier Call Center — Interactive Voice Response . . . . . . . . . . . . . . . . . . . . . . . . . . . .9-6
    Notification of Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9-6
        Common Deduction Codes on Remittance Advice . . . . . . . . . . . . . . . . . . . . . . .9-7
        Common Deduction Store Numbers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9-7
    Supplier Correspondence Packet Information . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9-8
    Checks . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9-9
    Letter Sent to Suppliers With a Debit Balance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9-10
    Microfilm Center . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9-10
    Sample Letter from Microfilm Center . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9-11

**Advertising & Marketing**
    EDLP   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10-1
    Rollbacks . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10-1
    Retailtainment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10-1
    Supplier Signing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10-1
    Package Design International . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10-1
    Wal-Mart Radio . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10-1
    Media  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10-2

**Hardline Returns**
    Returns From Stores/Clubs (Domestic Only) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11-1
    Returns From Return Centers (Domestic/Import Suppliers) . . . . . . . . . . . . . . . . . . . . .11-1
    Defective/Returned Merchandise Allowance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11-1
    Puerto Rico & Hawaii Returns . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11-2

**Measuring Guidelines and Sketches**
    Tops  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12-1
    Bottoms . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12-7
    Creepers/Bodysuits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12-12
    Sketches . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12-14

# General Information

## Key Phone Numbers

| | |
|---|---|
| **Accounts Receivable** | (501)273-4110 |
| **Advertising Department** | (501)273-4111 |
| **Accounts Payable** | |
| Supplier Call Center | (501)273-4089 |
| Assistant Controller | (501)273-4425 |
| A/P Divisional Manager | (501)273-6458 |
| A/P Divisional Manager | (501)273-4490 |
| Post Audit | (501)273-4089 |
| Supplier Call Center | (501)273-4089 |
| Supplier Master | (501)273-4089 |
| **Construction Accounting** | (501)273-4312 |
| **Consumer Testing** | (501)273-8028 |
| **EDI Services** | (501)273-8888 |
| **EDI Help Line** | (501)273-4556 |
| **Home Office Lobby** | (501)273-4270 |

| | |
|---|---|
| **International Accounting** | (501)273-4809 |
| **Merchandising Hotline** | (800)925-6278 |
| **Mitchell Building Lobby** | (501)273-4682 |
| **New Store Listing** | (501)273-4198 |
| **New Stores** | (501)273-4448 |
| **Pharmacy** | (501)273-4662 |
| **Public Relations** | (501)273-4314 |
| **Retail Link Help Desk** | (501)273-8888 |
| **SAM'S Club Inquiries** | (501)277-7400 |
| **Traffic Department** | (501)273-4024 |
| **UPC Bar Coding** | (501)273-6260 |
| **Wal-Mart Home Office** | (501)273-4000 |
| **Wal-Mart Visitor's Center** | (501)273-1329 |
| **Warehouse Administration** | (501)273-6332 |

## Addresses

Wal-Mart Stores, Inc.
702 SW 8th Street
Bentonville, AR 72716

SAM'S Club Home Office
608 SW 8th Street
Bentonville, AR 72712

Sam Walton Development Center
2001 SE 10th Street
Bentonville, AR 72716

Marketing Sample Room
708 SW F Street
Bentonville, AR 72716

Jewelry Sample Room
702 SW 8th Street
Bentonville, AR 72716

PMDC — Mail Room
1108 SE 10th Street
Bentonville, AR 72716

Sample Room
702 SW 8th Street
Bentonville, AR 72716

SAM'S Sample Room
608 SW 8th Street
Bentonville, AR 72716

Business Confidential © September 2001 Wal-Mart Stores, Inc.

# Wal-Mart Distribution Center Freight Delivery Addresses

| DC # | Facility Type | Address |
|---|---|---|
| 6001 | Distribution & Staple Stock | 1110 SE 10th St. |
| 6002 | Distribution & Staple Stock | 1102 Southeast 5th Street |
| 6003 | Distribution & Staple Stock | 3301 East Park & Blass |
| 6004 | Distribution | 1901 Hwy 102 East |
| 6004 | Staple Stock | 809 'P' Street |
| 6005 | Distribution | Vanhorn Hollow |
| 6005 | Staple Stock | 201 Old Elkhart |
| 6006 | Distribution & Staple Stock | 2200 7th Ave. SW |
| 6007 | Distribution & Staple Stock | 8100 South Zero Street |
| 6008 | Distribution | 2100 Southeast 5th Street |
| 6008 | Staple Stock | 2102 Southeast 5th Street |
| 6009 | Distribution | 1501 Maple Leaf Rd |
| 6009 | Staple Stock | 1100 North Iris Street |
| 6010 | Distribution | 690 Hwy 206 |
| 6010 | Staple Stock | 700 SW Bowen Mill Rd |
| 6011 | Distribution | 2200 Manufacturers Blvd. |
| 6011 | Staple Stock | 2210 Manufacturers Blvd. |
| 6012 | Distribution | 3100 North I-27 |
| 6012 | Staple Stock | 3101 North Quincy |
| 6013 | Distribution & Staple Stock | 4501 Wal-Mart Way |
| 6014 | Distribution | 680 Enoree Rd. |
| 6014 | Staple Stock | 670 Enoree Rd. |
| 6015 | Distribution | 630 Enoree Rd. |
| 6015 | Staple Stock | 620 Enoree Rd. |
| 6016 | Distribution | 3920 IH 35 North |
| 6016 | Staple Stock | 3930 IH 35 North |
| 6017 | Distribution | 2108 E. Tipton St. |
| 6017 | Staple Stock | 2106 E. Tipton St. |
| 6018 | Distribution | 2103 South Main |
| 6018 | Staple Stock | 2202 South Main |
| 6019 | Distribution | 7504 East Crossroads Blvd. |
| 6019 | Staple Stock | 7506 East Crossroads Blvd. |
| 6020 | Distribution | 4224 Kettering Road |
| 6020 | Staple Stock | 4220 Kettering Road |
| 6021 | Distribution | 1005 South H Street |
| 6021 | Staple Stock | 1015 South H Street |
| 6022 | Distribution | 1330 Southern Hwy |
| 6022 | Staple Stock | 1320 Southern Hwy |
| 6023 | Distribution | 21504 Cox Road |
| 6023 | Staple Stock | 21502 Cox Road |
| 6024 | Distribution | 3920 Southwest Blvd |
| 6024 | Staple Stock | 3910 Southwest Blvd |
| 6025 | Distribution | 6140 3M Drive |
| 6025 | Staple Stock | 6120 3M Drive |
| 6026 | Distribution | 10817 Hwy 99 West |
| 6026 | Staple Stock | 10813 Hwy 99 West |
| 6027 | Distribution | 300 Wal-Mart Dr./St. Rt. 970 |
| 6027 | Staple Stock | 200 Wal-Mart Dr./St. Rt. 970 |
| 6028 | Distribution & Staple Stock | 801 Cor-Da Blvd. |
| 6029 | Distribution | 152 North Highway 91 |
| 6029 | Staple Stock | 148 North Highway 91 |
| 6030 | Distribution | 42 - D Freetown Road |
| 6030 | Staple Stock | 42 - R Freetown Road |
| 6031 | Distribution & Staple Stock | Open 9/2000 |
| 6032 | Distribution & Staple Stock | 13231 11th Ave |
| 6034 | Distribution | 303 A J Riggs Rd. |
| 6034 | Staple Stock | 301 A J Riggs Rd. |
| 6035 | Distribution | 3220 Nevada Terrace |
| 6035 | Staple Stock | 3270 Nevada Terrace |
| 6036 | Distribution | Route 5 Box 5000A |
| 6036 | Staple Stock | Route 5 Box 5000B |
| 6037 | Distribution & Staple Stock | 2650 HWY 395 South |
| 6038 | Distribution | 8827D Old River Road |
| 6038 | Staple Stock | 8827S Old River Road |

| Type | City | St | Zip | Phone |
|---|---|---|---|---|
| Pharmacy | Bentonville | AR | 72716 | (501)273-4602 |
| RDC | Bentonville | AR | 72716 | (501)277-6181 |
| Storage | Searcy | AR | 72143 | (501)268-4271 |
| RDC | Bentonville | AR | 72716 | (501)277-6158 |
| WPM/Shoe | Palestine | TX | 75801 | (903)723-4436 |
| RDC | Cullman | AL | 35055 | (256)737-3143 |
| Shoe | Ft. Smith | AR | 72956 | (501)452-4143 |
| WPM | Bentonville | AR | 72716 | (501)277-6359 |
| RDC | Mt. Pleasant | IA | 52641 | (319)385-5655 |
| RDC | Douglas | GA | 31533 | (912)383-4051 |
| RDC | Brookhaven | MS | 39601 | (601)835-3654 |
| RDC | Plainview | TX | 79072 | (806)293-4249 |
| Pharmacy | Tifton | GA | 31794 | (912)382-5019 |
| WPM | Laurens | SC | 29360 | (864)682-1433 |
| RDC | Laurens | SC | 29360 | (864)682-1533 |
| RDC | New Braunfels | TX | 78130 | (830)620-3355 |
| RDC | Seymour | IN | 47274 | (812)523-5618 |
| RDC | Searcy | AR | 72143 | (501)279-6818 |
| RDC | Loveland | CO | 80538 | (970)679-4719 |
| RDC | Brooksville | FL | 34602 | (352)544-4926 |
| RDC | Porterville | CA | 93257 | (209)783-6025 |
| WPM | Greencastle | IN | 46135 | (765)658-2024 |
| RDC | Sutherland | VA | 23885 | (804)862-7725 |
| RDC | Grove City | OH | 43123 | (614)871-7025 |
| RDC | Menomonie | WI | 54751 | (715)232-7925 |
| RDC | Red Bluff | CA | 96080 | (530)529-8424 |
| RDC | Woodland | PA | 16881 | (814)857-5442 |
| Pharmacy | Crawfordsville | IN | 47933 | (765)364-1192 |
| WPM/Shoe | Hurricane | UT | 84737 | (435)634-1090 |
| RDC | Raymond | NH | 03077 | (603)895-5725 |
| RDC | Buckeye | AZ | | |
| Pharmacy | Hanford | CA | 93230 | (209)583-6073 |
| Shoe | Statesboro | GA | 30458 | (912)871-8439 |
| RDC | Ottawa | KS | 66067 | (785)229-3025 |
| RDC | Palestine | TX | 75801 | (903)538-4125 |
| RDC | Hermiston | OR | 97838 | (541)564-4600 |
| RDC | Marcy | NY | 13403 | (315)765-2125 |

Business Confidential © September 2001 Wal-Mart Stores, Inc.

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 6039 | Distribution | 1659 Pottertown Rd | RDC | Midway | TN | 37809 | (423)235-3325 |
| 6039 | Staple Stock | 1657 Pottertown Rd | | | | | |
| 6040 | Distribution | 1010 Production Drive | RDC | Hope Mills | NC | 28348 | (910)426-5025 |
| 6040 | Staple Stock | 1020 Production Drive | | | | 28348 | |
| 6041 | Distribution | RR2, Box 362D | WPM | Sharon Springs | NY | 13459 | (518)284-1025 |
| 6041 | Staple Stock | RR2, Box 362S | | | | | |
| 6042 | Distribution & Staple Stock | 2601 South Indian Meridian | Grocery | Pauls Valley | OK | 73075 | (405)207-5061 |
| 6043 | Distribution | 492 Jonesville Road | RDC | Coldwater | MI | 49036 | (517)279-2830 |
| 6043 | Staple Stock | 512 Jonesville Road | | | | | |
| 6044 | Distribution & Staple Stock | 801 Cor-Da Blvd. | Optical | Crawfordsville | IN | 47933 | (765)364-1076 |
| 6045 | Distribution & Staple Stock | 1201 Moberly Lane | Pharmacy | Bentonville | AR | 72716 | (501)273-7588 |
| 6046 | Distribution & Staple Stock | 11121 Elliot Place | Pharmacy | Williamsport | MD | 21795 | (301)223-5800 |
| 6047 | Distribution & Staple Stock | 5906 Business Route 220 | Grocery | Bedford | PA | 15522 | (814)624-5256 |
| 6048 | Distribution & Staple Stock | Open 9/2000 | RDC | Opelousas | LA | | |
| 6049 | Distribution & Staple Stock | 3301 East Park & Blass | Domestic Storage | Searcy | AR | 72143 | (501)268-4271 |
| 6050 | Distribution | 13486 South Unitec Drive | Grocery Export | Laredo | TX | 78045 | (956)717-2836 |
| 6050 | Staple Stock | 5601 Mann Circle | | | | | |
| 6051 | Distribution & Staple Stock | 1110 SE 10th | Jewelry | Bentonville | AR | 72716 | (501)273-4537 |
| 6052 | Distribution & Staple Stock | c/o GEO Logistics America 5745 Arbor Vitae Street | Export | Los Angeles | CA | 90045 | (310)568-2195 |
| 6053 | Distribution & Staple Stock | c/o Geo Logistics/ 8015 Westside Ind. Dr. Unit 1 | Export | Jacksonville | FL | 32219 | (904)786-7813 |
| 6054 | Distribution | 355 Callaway Church Road | RDC | La Grange | GA | 30240 | (706)242-4200 |
| 6054 | Staple Stock | 345 Callaway Church Road | | | | | |
| 6055 | Dry & Perishable | Open 8/2000 | Grocery/ Fresh | Monroe | GA | | |
| 6056 | Dry & Perishable | Open 8/2000 | Grocery/ Fresh | Terrell | TX | | |
| 6059 | Dry & Perishable | 3801 US Highway 50 E | Grocery | Olney | IL | 62450 | (618)393-5959 |
| 6060 | Distribution & Staple Stock | 23701 West Southern Ave | Import | Buckeye | AZ | 85326 | (602)386-3319 |
| 6060 | Distribution & Staple Stock | 4250 Hammer Ave | Import | Mira Loma | CA | 91752 | (909)361-4888 |
| 6061 | Distribution | 305 A J Riggs Rd. | Import | Statesboro | GA | 30458 | (912)871-4000 |
| 6061 | Staple Stock | 307 A J Riggs Rd. | | | | | |
| 6062 | Distribution & Staple Stock | 6874 S. Palo Verde Rd. | Export | Tucson | AZ | 85706 | (520)573-6397 |
| 6071 | Dry & Perishable | 5600 State Road 544 | Grocery | Winter Haven | FL | 33881 | (941)298-1044 |
| 6072 | Dry & Perishable | 973 West State Hwy 30 | Grocery | New Albany | MS | 38652 | (601)538-4056 |
| 6073 | Dry & Perishable | Hwy 601/100 N. Dove Sutton Rd. | Grocery | Pageland | SC | 29728 | (803)672-9057 |
| 6082 | Dry & Perishable | 3300 Sterlin Hurley Indust'l Hwy | Grocery | Clarksville | AR | 72830 | (501)754-4500 |
| 6083 | Dry & Perishable | 4404 Wendland Road | Grocery | Temple | TX | 76504 | (254)770-3628 |
| 6084 | Dry & Perishable | 670 Los Morros Road | Grocery | Los Lunas | NM | 87031 | (505)866-8600 |
| 6085 | Dry & Perishable | Open 4/2000 | Grocery | Tomah | WI | | |
| 6090 | Dry & Perishable | Open 7/2000 | Grocery | Corrine | UT | | |
| 6094 | Distribution (4/2000) | 5821 SW Regional Airport Blvd | RDC | Bentonville | AR | 72712 | |
| 6094 | Staple Stock (4/2000) | 5841 SW Regional Airport Blvd | | | | | |
| 6095 | Dry & Perishable | Open 6/2000 | Grocery | Opelika | AL | | |
| 6096 | Dry & Perishable | Open 6/2000 | Grocery | Johnstown | NY | | |
| 6097 | Dry & Perishable | 3701 Russell Dyche Memorial Hwy | Grocery | London | KY | 40741 | (606)877-4000 |
| 98-9559 | Fixture Consolidator | 102 N. 12th Ave/State Hwy 14 | Fixtures | Sterling | CO | 80751 | (970)522-2247 |
| 98-9560 | Fixture Consolidator | 110 Lakeview Drive | Fixtures | Crosslanes | WV | 25313 | (304)776-6602 |

Business Confidential © September 2001 Wal-Mart Stores, Inc.

# Wal-Mart Distribution Center Freight Delivery Addresses

| SAM'S DC | Facility Type | Address | City | ST | Zip | Phone |
|---|---|---|---|---|---|---|
| 6280 | C/O Daymark Freezer Cooler Whse | 3300 East Park Row | Arlington | TX | 76010 | (800)243-6530 |
| 6281 | C/O Daymark Freezer Cooler Whse | 1845 Westgate Parkway | Atlanta | GA | 30336 | (800)541-3819 |
| 6283 | C/O Daymark Freezer Cooler Whse | 3320 South Arlington Ave./Bldg #3 | Indianapolis | IN | 46203 | (800)323-1528 |
| 6284 | C/O Daymark Freezer Cooler Whse | R.D. 2 Orchard Lane | Leesport | PA | 19533 | (800)247-0565 |
| 6285 | C/O Daymark Freezer Cooler Whse | 500 Wiscold Drive | Rochelle | IL | 61068 | (800)947-5001 |
| 6288 | C/O Wal-Mart Grocery DC #6071 | 5600 State Road 544-SAM'S Grocery | Winterhaven | FL | 33881 | (941)298-1029 |
| 6289 – Alaskan Clubs | C/O PSI (Puget Sound International) | 2810 "B" Marshall Ave. | Tacoma | WA | 98421 | (253)272-2919 |
| 6291 | SAM'S Produce DC | 3701 Russell Dyche Memorial Hwy | London | KY | 40741 | (606)877-4000 |
| 6292 | SAM'S Produce DC | 973 State HWY 30 West | New Albany | MS | 38652 | (601)538-4000 |
| 6293 | SAM'S Produce DC | Hwy 601/100 West Dove Sutton Road | Pageland | SC | 29728 | (843)672-3000 |
| 6294 | SAM'S Produce DC | 3801 US Hwy 50 East | Olney | IL | 62450 | (618)393-5915 |
| 6295 | SAM'S Produce DC | 676 Los Morros Road N.W. | Los Lunas | NM | 87031 | (505)866-8600 |
| 6296 | SAM'S Produce DC | 5906 Business Route 220 | Bedford | PA | 15522 | (814)624-5207 |
| 6298 | C/O Wagner Industries | 11231 Phillips Industrial Blvd. | Jacksonville | FL | 32256 | (904)292-4999 |
| 6299 | C/O Star Distribution | 6874 South Palo Verde | Tucson | AZ | 85706 | (520)741-2719 |
| 6389 | | 13486 South Unitec Drive | Laredo | TX | 78045 | (956)717-1123 |
| 6491 | C/O Henderson/ Freezer Cooler Whse. | 830 East Horizon Drive | Henderson | NV | 89015 | (800)838-6759 |
| 6492 | C/O Akron Storage & Whse Co. | 1535 Exeter Road | Akron | OH | 44306 | (330)784-1918 |
| 6493 – Hawaiian Clubs | C/O USF Distribution Services | 1045 South Greenwood | Montebello | CA | 90640 | (323)890-1915 |
| 6494 | | 7500 East Crossroads Blvd. | Loveland | CO | 80537 | (970)635-1815 |
| 6495 | C/O Kane Logistics, Inc. | 14523 Industry Drive, Suite #3 | Hagerstown | MD | 21742 | (301)791-9190 |
| 6496 | C/O Wagner Industries, Inc. | 5801 Gardner | Kansas City | MO | 64120 | (816)483-5670 |
| 6498 | CLOSED 5/95 | | Temple | TX | | |
| 6499 | C/O Saddle Creek Corp. | 140 North Fleet Drive | Villa Rica | GA | 30180 | (770)459-1700 |
| 6537 – BR & ARG Clubs | C/O Geo Logistics | 8015 Westside Industrial Dr., Unit #1 | Jacksonville | FL | 32219 | (904)786-7813 |
| 6559 – Mexico Clubs | | 13486 South Unitec Drive | Laredo | TX | 78041 | (956)717-1123 |
| 6595 – China & Indonesia | C/O GEO Logistics Americas | 5745 Arbor Vitae Street | Los Angeles | CA | 90045 | (301)568-2195 |
| 6596 | C/O ASW Logistics | 41775 Ecorse Road Suite 160 | Belleville | MI | 48111 | (734)957-1720 |
| 6597 | C/O ASW Salem Logistics LLC | 11 Garabedian Drive | Salem | NH | 03079 | (603)870-0057 |
| 6598 | C/O Vitran Logistics | 1325 Central Ave. | University Park | IL | 60466 | (708)534-5409 |
| 6695 – Export DC | C/O DSL | 2423 Firestone Blvd. | Southgate | CA | 90280 | |
| 6697 | | 6301 Old Shakopee Road | Bloomington | MN | 55438 | (612)885-0001 |
| 6698 | | FM 686 Route #3 Box 10000 | Dayton | TX | 77535 | (409)258-0832 |
| 6699 | Diverted Storage | 3301 East Park & Blass Ave. | Searcy | AR | 72143 | (501)305-3601 |
| 8206 | C/O Piedmont Distribution Center | 1701 Understand Drive | Charlotte | NC | 28273 | (704)588-5240 |
| 8229 | C/O Saddle Creek Corp. | 3010 Saddle Creek Road, Bldg #15 | Lakeland | FL | 33801 | (941)667-1136 |
| 8230 | Closed 2/95 | | Rock Island | IL | | |
| 8231 | C/O Kane Industries | Stauffer Industrial Park | Taylor | PA | 18517 | (570)562-2230 |
| 8232 | | 488 West Muskegon Road | Greenfield | IN | 46140 | (317)467-0495 |
| 8233 | Closed 7/95 | | Houston | TX | | |
| 8234 | | 3301 East Park & Blass Ave. | Searcy | AR | 72143 | (501)268-3244 |
| 8235 | | 830 East Centre Park Blvd. | Desoto | TX | 75115 | (972)228-5684 |

## Division Listing

| | | | | | |
|---|---|---|---|---|---|
| 01 | Wal-Mart Stores | 13 | Return Center | 27 | Bakery & Deli |
| 03 | Printing & Mailing DC | 14 | Bud's Outlet | 28 | Dry Grocery |
| 04 | Real Estate | 15 | Hutcheson Shoes | 30 | Optical |
| 05 | Home Office | 17 | Photo Lab | 31 | 1-Hour Photo Lab |
| 06 | Automotive | 18 | SAM'S Club | 32 | Hearing Center |
| 07 | Warehouse/Traffic | 20 | Supercenter Mdse | 35 | Int'l Operations |
| 08 | Snack Bar | 22 | Quality Licensing | 36 | CMA/USA |
| 10 | Pharmacy | 24 | Fresh Meat | 45 | Wal-Mart Online |
| 11 | Jewelry | 25 | Produce | 98 | Fixture Shop |
| 12 | Int'l Merchandising | 26 | Dairy & Bread | | |

Business Confidential © September 2001 Wal-Mart Stores, Inc.

# Supplier Agreement

The Supplier agreement provides the basic guidelines for which the Supplier and Wal-Mart will conduct their business. Purchase orders may supersede the basic Supplier agreement. All purchase orders should be reviewed upon receipt with any discrepancies resolved prior to shipment.

A check remit address or Supplier name change will require written acknowledgment signed by a corporate officer representing that company. The information regarding those changes must be sent to:

>Wal-Mart Stores, Inc.
>Home Office
>1108 SE 10th Street
>Supplier Master Department
>Bentonville, Arkansas 72716-8009

All Supplier agreement updates must be directed to the buyer for authorization. This includes name changes and remit changes.

Claims to address changes as well as tax levy information should also be sent to the above address for updating in our system.

All retail Suppliers must have an authorized Supplier agreement with Wal-Mart Stores, Inc.

Please include your 9-digit tax ID number if you are a new expense Supplier. Expense Suppliers are defined as services rendered for such things as floor maintenance, lawn care, etc.

The W-9 form, along with an invoice, is needed to set up a new expense Supplier number.

For assistance with information and inquiries concerning Supplier agreements, please call Accounts Payable at (501)273-4089.

## Completing the Supplier Agreement
### Top Section
Leave blank. The buyer will complete this section.

### General Supplier Information
Please complete this section regarding minority/woman-owned company status.

### Addresses
1. Federal Taxpayer Identification of Payee — Enter a social security number if a "TIN" number is not available.
2. Type of Payee — Check the appropriate space.
3. Address to Mail Payment — Indicate the address where Wal-Mart is to send checks for invoice payment.
4. Address to Mail Claim Documentation — Indicate the address where Wal-Mart is to send Accounts Payable claims. If no address is listed, the claims will be automatically mailed to the "Address to Mail Payment" address.
5. Address to Send Purchase Orders — Indicate the address where purchase orders should be mailed.
6. Address to Send Pricing Tickets — Indicate address where price tickets for apparel merchandise should be sent.

Business Confidential © September 2001 Wal-Mart Stores, Inc.

## Supplier Financial Information
A complete set of financial statements should be returned with your completed agreement.

## Notice Regarding Assignment of Account
Please read and understand this section.

## Shipping Terms
1. Check only one of the freight terms/FOB points:
   a. Collect — FOB Vendor
   b. Prepaid — FOB Purchaser
   c. Prepaid to Consolidator — FOB purchaser's consolidator
2. Indicate any minimums for prepaid freight.

## Shipper Load and Counting Responsibilities
Please read and understand this section.

## Condition of Sale
Check only those programs currently available to Wal-Mart. Be sure to send complete information on programs selected.

## Standard Purchase Order Allowances
Indicate which allowances and discounts your company offers. For each allowance offered, please indicate the following:
1. Percent Applicable to Each Allowance — Use percentages only. Dollar amounts are not valid.
2. Special Instructions — Note exception such as graduated percentage on a volume discount.
3. How Paid — Indicate payment method: off invoices (OI), credit memo (CM) or check (CK).
4. When Paid — Indicate payment method: each invoice (EI), Quarterly (Q), semi-annually (S) or annually (A)

## Condition of Merchandise
Please read and understand this section.

## Price Guarantee
Please read and understand this section.

## Notice Regarding Price Increases
Please read and understand this section.

## Debit Balances
Please read and understand this section.

## Payments of Money
Please read and understand this section.

## Warranty Policy
1. As noted, your company will be charged current costs, plus a 10% handling charge for all defects.
2. Check the option to indicate how your company wants defective merchandise handled.

Business Confidential © September 2001 Wal-Mart Stores, Inc.

3. Provide a toll-free number for securing return authorization numbers or all calls will be made collect.
4. Indicate the address where defective merchandise should be returned.

## Payment Terms
1. Indicate the cash discount percent.
2. Record the number of days available to earn the discount.
3. Note the number of days available for net payment.
4. Indicate whether EOM terms are applicable.
5. Indicate any special terms for new store and distribution center locations.

## Insurance Requirements
1. Indicate the contact for product liability claims — name, address and telephone number.
2. Please indicate the name of your company's product liability insurance carrier.
3. A copy of the certificate of insurance and the broad form Supplier's endorsement must be included when returning this Supplier agreement.

## Signatures
1. Include addresses and telephone numbers for the following:
   a. Sales Representative
   b. Manager or Vice President of Sales
   c. President of Company
2. A principal of your company must indicate title; sign (do not type).

## Shipping Instructions
Indicate your ship points for each of our distribution centers.

## Purchase Order Terms and Conditions
The purchase order terms and conditions were included with this agreement due to the electronic transmission of many Suppliers' purchase orders. Please read and understand the PO terms and conditions.

---

### PURCHASE ORDER TERMS AND CONDITIONS

1. Definitions: As used in these Terms and Conditions, "order" shall mean this Purchase Order and all its attachments, instructions and exhibits. "Goods" shall mean any materials, machinery, equipment, article, item or work provided for in this order. "Seller" shall mean the person, firm or corporation named on the face hereof to whom this order is issued. "Purchaser" shall mean the person, firm or corporation named on the face hereof by whom this order is issued.

2. Agreement: This order sets forth the entire agreement between Seller and Purchaser with respect to the sale and purchase of the goods, and it is not valid unless signed or initialed by an authorized buyer for Purchaser. Acceptance of this order may be made only by shipment of the goods in accordance herewith AND ACCEPTANCE IS EXPRESSLY LIMITED TO ALL OF THE TERMS AND CONDITIONS OF THIS ORDER, INCLUDING ALL ATTACHMENTS AND SUPPLEMENTAL INSTRUCTIONS DELIVERED HEREWITH AND TO CURRENT SHIPPING, BILLING AND ROUTING INSTRUCTIONS OF PURCHASER. SHIPMENTS MADE CONTRARY TO PURCHASER'S ROUTING INSTRUCTIONS WILL BE CONSIDERED F.O.B. DESTINATION (EITHER STORE OR WAREHOUSE). Seller's failure to comply with each and every term of this order shall constitute an event of default and shall be grounds for the exercise by Purchaser of any of the remedies provided for in these Terms and Conditions.

Business Confidential © September 2001 Wal-Mart Stores, Inc.

3. Warranties and Guarantees: By acceptance of this order, Seller warrants and guarantees that:
   a) The goods will comply with all specifications contained in this order and will be of comparable quality as all samples delivered to Purchaser;
   b) The goods are not adulterated, misbranded, falsely labeled or advertised, or falsely invoiced within the meaning of any local, state or federal laws and amendments thereof now in force;
   c) The goods have been labeled, advertised and invoiced in accordance with the requirements (if applicable) of the Wool Products Labeling Act of 1939, the Fur Products Labeling Act and the Textile Fiber Products Identification Act, and any and all other governmental laws and the respective rules and regulations thereunder;
   d) Reasonable and representative tests made in accordance with the requirements of the Flammable Fabrics Act (if applicable) show the goods are not so highly flammable as to be dangerous when worn by individuals;
   e) The goods are properly labeled as to the content as required by applicable Federal Trade Commission Trade Practice Rules, the Fair Labor Standards Act, Federal Food, Drug and Cosmetics Act, and similar laws, rules and regulations;
   f) The goods ordered herein shall be delivered in good and undamaged condition and shall, when delivered, be merchantable and fit, and safe for purposes for which the same are intended to be used, including without limitation, consumer use;
   g) The goods do not infringe upon or violate any patent, copyright, trademark, trade name or, without limitation, any other rights belonging to others;
   h) All weight, measures, sizes, legends or descriptions printed, stamped attached or otherwise indicated with regard to the goods are true and correct, and conform and comply with all laws, rules, regulations, ordinances, codes and or standards relating to said goods of federal, state and local governments; and
   i) The goods are not in violation of any other laws, ordinances, statues, rules or regulations of the United States or any state or local government or any subdivision or agency thereof.

It shall be within the sole discretion of Purchaser to determine when the above mentioned warranties and guarantees have been breached. In addition to the other guarantees and warranties contained in this paragraph, the warranties of the Uniform Commercial Code are specifically incorporated herein. Nothing contained in this order shall be deemed a waiver of warranties implied by law.

4. PROHIBITION AGAINST FORCED LABOR, CHILD LABOR AND TRANS-SHIPMENTS: SUPPLIER CERTIFIES, REPRESENTS AND WARRANTS THE GOODS PURCHASED PURSUANT TO THIS AGREEMENT ARE NOT MINED, PRODUCED, MANUFACTURED, ASSEMBLED OR PACKAGED BY THE USE OF FORCED LABOR, PRISON LABOR OR FORCED OR ILLEGAL CHILD LABOR AND THE GOODS WERE NOT TRANS-SHIPPED FOR THE PURPOSE OF MISLABELING, EVADING QUOTA OR COUNTRY OF ORIGIN RESTRICTIONS OR FOR THE PURPOSE OF AVOIDING COMPLIANCE WITH FORCED LABOR, PRISON LABOR OR CHILD LABOR LAWS.

5. Remedies on Breach or Default: Failure to comply with each and every term of this order and each guarantee or warranty herein shall be grounds for the exercise by Purchaser of any one or more of the following remedies:
   a) Cancellation of all or any part of any order without notice, including without limitations the balance of any order received on installment; and
   b) Rejection of all or any part of this shipment by Purchaser, which may return the goods or hold them at Seller's risk and expense. Purchaser's right to reject and return or hold goods at Seller's expense and risk shall extend to goods covered by this order which are returned by Purchaser's customer for any reason entitling Purchaser to reject. Purchaser may, at its option, require Seller to grant a full refund or credit to Purchaser of the price actually paid by any customer of Purchaser for such item in lieu of replacement with respect to any item which Purchaser is entitled to reject hereunder. Purchaser shall be under no duty to inspect the goods before resale thereof and notice of rejection shall be deemed given within a reasonable

Business Confidential © September 2001 Wal-Mart Stores, Inc.

time if given within a reasonable time after notice of defects or deficiencies has been given to purchaser by its customers. In respect to any goods rightfully rejected by Purchaser, there shall be charged to Seller all expenses incurred by Purchaser (I) unpacking, examining, repackaging and storing such goods (it being agreed that in the absence of proof of a higher expense that the purchaser shall claim an allowance for each rejection at the rate of 10% of the price for each rejection made by Purchaser) and (ii) landing and reshipping such goods. When Purchaser has exercised any of the above remedies, Seller shall not have the right to make a conforming delivery within the contract time. In addition to Purchaser's remedies provided above, the buyer's remedies of the Uniform Commercial Code are specifically incorporated in this agreement.

6. Indemnification: Seller agrees to save Purchaser, its customers and those for whom Purchaser acts as agent in purchasing hereunder, harmless and indemnified from all claims, liability, loss, damage and expense, including reasonable attorneys' fees, sustained from the purchase, use or sale of any goods or from the breach of any of the guarantees or warranties hereunder, or from any actual or claimed trademark, patent, or copyright infringements, or any litigation based thereon, and such obligations shall survive acceptance of the goods and payment thereof by the Purchaser.

7. DELIVERY TIME: THE TIME SPECIFIED HEREIN FOR SHIPMENT OF GOODS IS OF THE ESSENCE OF THIS AGREEMENT AND IF SHIPMENT IS NOT EFFECTED WITHIN THE TIME SPECIFIED, PURCHASER RESERVES THE RIGHT, AT ITS OPTION AND WITHOUT LIMITATIONS, TO CANCEL THIS ORDER OR REJECT ANY GOODS DELIVERED AFTER THE TIME SPECIFIED and to hold Seller liable for damages sustained by Purchaser as a result of Seller's failure. Notwithstanding Purchaser's right to cancel and or reject goods, Seller agrees to inform Purchaser immediately of any failure to ship any part of this order or the exact goods called for on this order on the shipment date specified. Acceptance of any goods shipped after the specified shipment date shall not be construed as a waiver of any of Purchaser's rights resulting from the late shipment.

8. Price Guarantees: Prices herein are guaranteed by Seller against manufacturer's or Seller's own price decline and against legitimate competition until date of shipment. In the event that prior to final shipment under this order, Seller sells, or offers to sell to others, goods substantially of the same kind as ordered herein at lower prices and or on terms more favorable to a third party than those stated in this order, the prices and or terms herein shall be deemed automatically revised to equal the lowest prices and or most favorable terms at which Seller shall have sold or shall have offered such goods and payments shall be made accordingly. In the event Purchaser shall become entitled to such lower prices, but shall have made payment at any price in excess thereof, Seller shall promptly refund the difference in price to Purchaser. Seller agrees to meet the price of legitimate competition. The prices to Purchaser set forth in this order include all taxes whether or not set forth separately. If any manufacturer's excise or other similar or different taxes are paid on the goods described in this order and if such tax, or any part thereof, is refunded to Seller, then Seller shall immediately pay Purchaser the amount of such refund. In the event that a court or regulatory agency or body finds the prices herein are in excess of that allowed by any law or regulation of any governmental agency, the prices herein shall be automatically revised to equal a price which is not in violation of said law or regulations. If Purchaser shall have made payment before it is determined there has been a violation, Seller shall promptly refund an amount of money equal to the difference between the price paid for the goods and a price which is not in violation of said regulations.

9. DATING: ALL DATING SHALL BEGIN AT THE DATE OF RECEIPT OF THE GOODS BY PURCHASER. ON ALL E.O.M. DATING, GOODS RECEIVED AFTER THE 24TH OF ANY MONTH SHALL BE PAYABLE AS IF RECEIVED IN THE FOLLOWING MONTH. INVOICES SHOULD BE MAILED ON THE SAME DAY GOODS ARE SHIPPED AND SHALL DATE FROM PURCHASER'S RECEIPT OF THE GOODS. CASH DISCOUNT WILL BE CALCULATED ON THE GROSS AMOUNT OF SUPPLIER'S INVOICE.

Business Confidential © September 2001 Wal-Mart Stores, Inc.

10. PURCHASER RESERVES THE RIGHT TO TAKE ANTICIPATION, AT PREVAILING RATE, ON ANY INVOICES PAID BEFORE DUE DATE.

11. Cancellation: Purchaser may cancel all or any part of this order at any time prior to shipment. In addition, in the event any place of business or other premises of Purchaser shall be affected by lockouts, strikes, riots, ware, fire, civil insurrection, flood, earthquake, or any other casualty or cause beyond Purchaser's control, which might reasonably tend to impede or delay the reception, handling, inspecting, processing or marketing of the goods covered by this order by Purchaser, its agents or employees, Purchaser may, at its option, cancel all or any part of the undelivered order hereunder by giving written notice to Seller which notice shall be effective upon mailing.

12. Set-off: Purchaser may set off against amounts payable under this order all present and future indebtedness of the Seller to Purchaser arising from this or any other transaction whether or not related thereto.

13. Assignment: Seller shall not assign the obligation to perform this order or any part hereof, and Purchaser shall not be obligated to accept a tender of performance by any assignee, unless Purchaser shall have previously expressly consented in writing to such an assignment.

14. Publicity: Seller shall not refer to Purchaser or any company affiliated with Purchaser in publication form in connection with goods or services rendered by Seller without the prior written approval of Purchaser.

15. Validity: No finding that a part of this order is invalid or unenforceable shall affect the validity of any other part hereof.

16. Seller agrees that any credit balance will be paid to Purchaser upon written request.
    **SUPPLIER NO._____ DEPARTMENT NO._____ EFFECTIVE DATE __/__/__**